982 F.2d 1497
 24 Fed.R.Serv.3d 1339
 George SOURAN, as Personal Representative of the Estate of
Linda Rebstock Von Bergen, George Souran,
Individually, Plaintiff-Appellant,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellee.
George SOURAN, as Personal Representative of the Estate of
Linda Rebstock Von Bergen, and George Souran,
individually, Plaintiff-Appellant,
R. Ronald Fraley, Peter J. Kelly, Richard M. Zabak, Daniel
P. Mitchell, Appellants,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellee.
 Nos. 90-3341, 90-3703.
 United States Court of Appeals,
Eleventh Circuit.
 Jan. 21, 1993.
 
 George K. Rahdert, Alison M. Steele, Rahdert & Anderson, St. Petersburg, FL, for plaintiff-appellant.
 Kirk M. Gibbons, Tampa, FL, Eliott R. Good, Chorpenning, Good & Mancuso Co., LPA, Columbus, OH, for defendant-appellee.
 John A. DeVault, Jane A. Lester, Bedell, Dittmar, DeVault & Pillans, Jacksonville, FL, for Fraley, Kelly, Zabak.
 Daniel P. Mitchell, Mitchell and Carter, P.A., Tampa, FL, for George Souran.
 Glenn Waddell, Waddell and Ready, P.A., Auburndale, FL, for Daniel Mitchell.
 Thomas M. Byrne, John H. Fleming, Sutherland, Asbill & Brennan, Atlanta, GA, for Travelers Ins. Co.
 Appeals from the United States District Court for the Middle District of Florida.
 Before TJOFLAT, Chief Judge, COX, Circuit Judge, and GODBOLD, Senior Circuit Judge.
 TJOFLAT, Chief Judge:
 
 
 1
 These consolidated appeals present two related issues stemming from a truly novel set of facts. George Souran appeals the district court's entry of summary judgment dismissing his negligence action against The Travelers Insurance Company (Travelers), his deceased daughter's life insurance carrier. Souran and his lawyers also appeal the court's imposition of Fed.R.Civ.P. 11 sanctions against them. We find that the court improvidently granted both summary judgment and sanctions. Accordingly, we reverse the grant of summary judgment, reverse the imposition of sanctions, and remand the case for further proceedings.
 
 I.
 A.
 
 2
 On May 17, 1986, Linda Von Bergen (Mrs. Von Bergen) drowned off the coast of Puerto Rico while on a fishing trip aboard the Makaira Hunter with her husband Harry Von Bergen (Mr. Von Bergen), three other passengers, and a crew of two. Although the sea was calm and the weather clear, Mrs. Von Bergen and one of the other passengers, Mike Trial, disappeared overboard from their positions on the deck of the boat. Nearly a quarter of an hour passed before Mr. Von Bergen and the others noticed his wife's absence. Incredibly, the captain, unwilling to cut his fishing lines, refused to search for the missing passengers for yet another thirty minutes. About three hours after their disappearance, the Makaira Hunter located Mrs. Von Bergen and Trial in the water. Trial was treading water and clinging to Mrs. Von Bergen's naked, lifeless body. The day after Mrs. Von Bergen's death, Mr. Von Bergen's ex-wife Duanita Von Bergen (Duanita), with whom he had occasionally cohabited during his marriage to Mrs. Von Bergen, stayed with him in his hotel room in Puerto Rico.
 
 
 3
 Only four days before Mrs. Von Bergen's death, Mr. Von Bergen purchased a travel accident policy from Travelers. The four-day policy insured Mr. and Mrs. Von Bergen's lives during their vacation and fishing trip in Puerto Rico. The policy obligated Travelers to pay $150,000 for either Mr. or Mrs. Von Bergen's "accidental death," and $5,000 for either's "accidental medical expenses."[1]
 
 
 4
 On May 23, 1986, the travel agent who had sold Mr. Von Bergen the Travelers insurance policy telephoned Travelers' Hartford, Connecticut office, informed Travelers that Mrs. Von Bergen had died during the covered period, and requested that claim forms be sent to Mr. Von Bergen. Shortly thereafter, James R. McGann, the assistant manager of Travelers' Life Claims Department in the Accidental Death Unit, sent Mr. Von Bergen a letter and claim forms, and requested that he provide copies of Mrs. Von Bergen's death certificate and any newspaper articles concerning her demise.
 
 
 5
 Over four months later, Harvey V. Delzer, an attorney representing Mr. Von Bergen in connection with this and other accidental death claims, wrote Travelers and enclosed Mr. Von Bergen's completed claim form and related documents. Delzer's letter requested that Travelers direct all correspondence and inquiries related to Mr. Von Bergen's claim to Delzer and inform him of any anticipated delay in processing the claim. Eleven days later, McGann, on behalf of Travelers, sent a check for $150,000 to Mr. Von Bergen at his home. McGann recorded the existence of Mr. Von Bergen's claim and Travelers' payment on an index card in the Accidental Death Unit's handwritten registration files. Neither the claim nor its payment were recorded in Travelers' computer system when it went on-line about a month later.
 
 
 6
 On April 3, 1987, William A. Narducci, an attorney representing George Souran, Mrs. Von Bergen's father, wrote Travelers and indicated that Souran and Mrs. Von Bergen's "other heirs" intended to assert their claim to the proceeds of the Travelers insurance policy.[2] Narducci sent the letter to the attention of the "Individual Claims Dept." of Travelers' Hartford, Connecticut office. The letter's caption referred to "Linda Von Bergen, deceased" and the correct Travelers policy number. Narducci's letter cryptically demanded that Travelers not disburse any proceeds from the policy until the issue of the "circumstances" surrounding Mrs. Von Bergen's death were resolved. Of course, Travelers had already disbursed the proceeds to Mr. Von Bergen over five months earlier.
 
 
 7
 Within Travelers, the Accidental Death and Medical Reimbursement units are located on the same floor in the same building. The units handle different types of reimbursement under policies like Mrs. Von Bergen's which provide both death and medical benefits. Not surprisingly, the Accidental Death Unit handles accidental death and dismemberment claims, and the Medical Reimbursement Unit handles medical reimbursement for other accidents, sicknesses, and the like.
 
 
 8
 Following Travelers' procedure, a mail-room employee opened and read Narducci's letter and then routed it to Traveler's Medical Reimbursement Unit. Once in that unit, the letter was routed to Kathleen Barsom, an assistant claims coordinator. Barsom received the letter because she was a supervisor and nonsupervisors do not handle attorney mail. Although Narducci's letter indicated that Mrs. Von Bergen was "deceased," referred to "the circumstances of [her] death" and to her "heirs," and inquired about "life insurance on [her] life," Barsom did not forward Narducci's letter to the Accidental Death Unit.
 
 
 9
 Upon receiving Narducci's letter, Barsom searched Travelers' computer files and found no record of prior claims or payments. Barsom neither searched the Accidental Death Unit's manual registration files nor consulted with anyone in that unit regarding Mrs. Von Bergen's policy. Barsom testified in her deposition that she thought Travelers' computer system went on-line in November 1986 and was not sure whether pre-November 1986 claims had been recorded in the system.
 
 
 10
 On April 24, 1987, unaware that Travelers had paid the proceeds of Mrs. Von Bergen's policy back in October 1986, Barsom sent claim forms to Narducci. Both Barsom and McGann testified that if Barsom had known that Travelers had previously paid a claim on the policy, someone at Travelers would have so notified Narducci. When Narducci did not return the claim forms, Barsom telephoned his office on May 20 and 21, 1987. Narducci did not return the calls. A few days later, Barsom sent Narducci a letter and a second set of claim forms. The letter referenced both Mrs. Von Bergen's policy number and the claim number that Travelers had assigned Souran's expected claim based on Narducci's April 3, 1987 letter. Barsom's letter briefly explained the type of coverage provided by Mrs. Von Bergen's policy, including both accidental death and medical expense reimbursement coverage. Around this time, another insurance company informed Travelers that several insurance companies intended to dispute their liability on their insurance policies because they suspected that Mr. Von Bergen murdered Mrs. Von Bergen.
 
 B.
 
 11
 Contemporaneous with the above, a parallel set of circumstances developed. Three days before her death, Mrs. Von Bergen had executed a new will naming Duanita and Mr. Von Bergen as her beneficiaries, even though Mrs. Von Bergen's father and two sisters were alive. On October 20, 1986, five months after his daughter drowned, Souran filed a petition to revoke probate of Mrs. Von Bergen's will in which he alleged that Duanita and Mr. Von Bergen arranged to have Mrs. Von Bergen murdered. Souran also filed a wrongful death action against Duanita and Mr. Von Bergen in which he alleged that they had conspired to procure Mrs. Von Bergen's death in order to collect over $5 million in life insurance proceeds.
 
 
 12
 On July 16, 1987, in settlement of Souran's wrongful death action, Duanita and Mr. Von Bergen assigned Souran all their rights to the insurance proceeds payable on Mrs. Von Bergen's policies. Although Travelers had already paid him $150,000, Mr. Von Bergen represented that he had received no insurance proceeds based on any of Mrs. Von Bergen's policies. Souran testified in his deposition that he did not know Travelers had already paid Mr. Von Bergen and, if he had known, he would not have agreed to the settlement without relieving Mr. Von Bergen of the proceeds.
 
 
 13
 On August 10, 1987, Souran's attorney, Peter J. Kelly of Shackleford, Farrior, Stallings & Evans of Tampa, Florida, sent the completed claim forms to Barsom, demanding that Travelers pay the proceeds of Mrs. Von Bergen's policy to Souran. Barsom referred Kelly's letter to McGann, who, on September 3, 1987, called Kelly and explained that Travelers had paid the policy proceeds to Mr. Von Bergen in October 1986. This was the first time that Souran and his attorneys learned of the prior payment.
 
 
 14
 On April 4, 1988, Souran, through Kelly, F. Ronald Fraley, and Richard M. Zabak, all of the Shackleford firm, filed suit against Travelers. Zabak signed the complaint. Souran alleged in his complaint that he was entitled to recover directly under the policy (count I), as contingent beneficiary of the policy proceeds (count II), and because Travelers had negligently breached its duty to notify him in a timely manner that Mrs. Von Bergen's policy proceeds had been paid (count III). Travelers filed a motion to dismiss all three counts for failure to state claims on which relief could be granted. District Judge George C. Carr denied the motion on July 13, 1988.
 
 
 15
 In addition to several other affirmative defenses raised in its answer, Travelers alleged that the policy was void ab initio because Mr. Von Bergen had procured the policy with the fraudulent intention of having his wife murdered in order to recover the policy proceeds. On April 26, 1989, nearly a year after Travelers filed its motion to dismiss, Souran filed a motion for summary judgment on count I. While Souran's motion was pending, the case was assigned to Judge Clifford S. Green, a visiting senior district judge from the Eastern District of Pennsylvania. On February 15, 1990, Judge Green found that material questions of fact remained unresolved, denied Souran's summary judgment motion, and ordered the deputy clerk to list the case for jury trial. The case was then assigned to Judge Clarence C. Newcomer, a visiting senior district judge from the Eastern District of Pennsylvania, for jury trial.
 
 
 16
 On July 27, 1989, Souran replaced Fraley, Kelly, and Zabak of the Shackleford firm with Daniel P. Mitchell of the law firm Mitchell & Carter of Tampa, Florida. On March 9, 1990, Souran, through Mitchell, and counsel for Travelers stipulated that Souran would amend his complaint by deleting counts I and II, and that the suit would proceed to trial only as to count III, the negligence claim.
 
 
 17
 On the morning of March 13, 1990, the day that trial was to begin, but before the already impaneled jury had arrived at court, Travelers filed separate motions seeking a directed verdict on count III, and Rule 11 sanctions against Souran and his lawyers as to counts I and II.[3] During colloquy with Mitchell and Travelers' lawyer, the court indicated that it intended to construe Travelers' motion for directed verdict as a motion for summary judgment and asked Mitchell to file a written response to the motion the next morning.[4] Souran opposed the motion, noting that Judge Carr had previously held that Souran had alleged facts sufficient to establish that Travelers had a duty to Souran when Travelers' motion to dismiss was denied in July 1988. On March 15, 1990, the court granted summary judgment for Travelers on count III. Souran appeals in No. 90-3341, which we consider in part II of this opinion.
 
 
 18
 Soon after the court granted summary judgment, Travelers moved for Rule 11 sanctions against Souran and his lawyers on count III. On June 15, 1990, the court granted Travelers' combined motions for sanctions on all counts. The court awarded sanctions against (1) Mitchell for $15,000 on count III only, (2) Fraley, Kelly, and Zabak for $45,000 each on all counts, and (3) Souran for Travelers' reasonable attorneys' fees and expenses on all counts.[5] Souran, Mitchell, and Fraley, Kelly, and Zabak appeal in No. 90-3703, which we consider in part III of this opinion.
 
 II.
 
 19
 Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). "[S]ummary judgment will not lie ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). We review the district court's grant of summary judgment on count III de novo, see White v. Edmond, 971 F.2d 681, 683 (11th Cir.1992), and review the evidence and draw related inferences in the light most favorable to Souran, see Anderson, 477 U.S. at 255, 106 S.Ct. at 2513; Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970); Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir.1992). We conclude that, in count III, Souran sufficiently alleged (1) the elements of negligent misrepresentation and (2) that Travelers negligently failed to exercise due care generally.
 
 A.
 
 20
 Souran argues that count III sounds in common law negligent misrepresentation. In Florida, plaintiffs may establish negligent misrepresentation by proving "(1) [a] misrepresentation of a material fact; (2) the representor ... ma[d]e the representation without knowledge as to its truth or falsity, or ... under circumstances in which he ought to have known of its falsity; (3) the representor ... intend[ed] that the misrepresentation induce another to act on it; (4) injury must result to the party acting in justifiable reliance on the misrepresentation." Hoon v. Pate Constr. Co., Inc., 607 So.2d 423, 427 (Fla.Dist.Ct.App.1992) (per curiam) (quoting Atlantic Nat'l Bank of Fla. v. Vest, 480 So.2d 1328, 1331-32 (Fla.Dist.Ct.App.1985)); see also Hasenfus v. Secord, 962 F.2d 1556, 1561 (11th Cir.1992) (negligent misrepresentation). We hold that count III of Souran's complaint survives summary judgment.[6]
 
 1.
 
 21
 The first element of negligent misrepresentation requires the existence of a material misrepresentation. Souran argues that the sending of claim forms constitutes a misrepresentation that the policy remained unpaid. This argument enjoys considerable intuitive appeal. Travelers' response to Narducci's letter was not a meaningless act devoid of communicative significance. Both Barsom and McGann testified in their respective depositions that if they had known what the other knew--if Barsom had known the policy had been paid, or if McGann had known of Narducci's letter--then Travelers would have informed Narducci that the policy had been paid. Indeed, when Travelers ultimately discovered that it had paid the proceeds Travelers denied Souran's claim. A reasonable jury could find that by sending the claim forms, Travelers represented that Souran could sensibly expect that Travelers would seriously consider his claim to his daughter's policy proceeds.
 
 2.
 
 22
 The second element of negligent misrepresentation requires that the representation be made under circumstances in which the representor should have known of its falsity. "A representation made with an honest belief in its truth may still be negligent, because of lack of reasonable care in ascertaining the facts, or in the manner of expression, or absence of the skill and competence required by a particular business or profession." W. Page Keeton et al., Prosser and Keeton on The Law of Torts § 107, at 745 (5th ed. 1984) (footnotes omitted); see also Hoon, 607 So.2d at 427-428. Souran does not and need not allege that Travelers intentionally misled him as to the status of his daughter's policy. Rather, Souran need only and does assert that Travelers "negligently failed to ascertain the truth or falsity of [its] representation." Hasenfus, 962 F.2d at 1561.
 
 
 23
 In its March 15, 1990 order granting summary judgment on count III, the district court held that "[n]o reasonable person could conclude that ... the person who sent the forms knew or should have known them to represent [that no other claims had been filed or honored]." We disagree for three reasons. First, Narducci's letter clearly indicated that Souran intended to assert a claim to the policy proceeds. More importantly, the letter expressly demanded that Travelers not disburse the policy proceeds until Souran's interest was resolved. A reasonable jury could conclude that this demand compelled Travelers to inquire of itself whether the policy proceeds had been paid and to convey such information to Narducci. Indeed, Barsom and McGann indicated that the information would have been passed on had Barsom been aware of it.
 
 
 24
 Second, Travelers policy dictates that attorney mail receive heightened attention. Upon receiving the letter, Travelers' mail room routed Narducci's letter to the Medical Reimbursement Unit where the letter was directed to Barsom, a unit supervisor. That only supervisors may handle attorney mail suggests Travelers' increased concern about claimants who employ attorneys to assist their recovery. A reasonable jury could conclude that Travelers negligently failed to provide Narducci with full information.
 
 
 25
 Third, the knowledge of one Travelers employee may be imputed to another. "When ample time exists for communication between different employees a failure of one employee to advise another of transactions affecting the corporate business is the fault only of the corporation." St. Petersburg Coca-Cola Bottling Co. v. Cuccinello, 44 So.2d 670, 676 (Fla.1950); see also Harris v. Lewis State Bank, 436 So.2d 338, 341 (Fla.Dist.Ct.App.1983). A reasonable jury could find that between May 23, 1986, when Travelers first learned of Mrs. Von Bergen's death, and July 16, 1987, when Souran settled his suit against Duanita and Mr. Von Bergen, Travelers had "ample time" for communication among its employees.
 
 
 26
 In Johnson v. Aetna Casualty & Surety Company, 448 So.2d 1056 (Fla.Dist.Ct.App.1984), plaintiffs sought to introduce evidence of correspondence to show that Aetna was aware of plaintiffs' new address. Plaintiffs contended that because Aetna's claims department was aware of the new address, other departments in Aetna should be charged with such knowledge. The court held the evidence admissible and rejected the proposition "that such knowledge cannot be imputed from one separate and distinct department of an insurance company to another--in the present case the claims department and the billing and underwriting department." Id. at 1057. This principle applies with heightened magnitude to Travelers. While the information breakdown in Johnson occurred between entirely distinct departments, the breakdown at Travelers occurred between two claims departments that deal with claims arising out of the same type of policy.
 
 
 27
 Travelers contends that it satisfied its duty to inquire whether Mrs. Von Bergen's policy proceeds had been paid. Upon receiving Narducci's letter, Barsom typed the policy number into Travelers' computer system and relied solely upon the computer to indicate the existence of prior claims and disbursements. The computer indicated none. According to Barsom, Travelers' computer system went on-line about a month after it paid the proceeds to Mr. Von Bergen, but she did not know whether prior claims were input into the system. Travelers may be negligent institutionally for failing to input past claims into the computer system. Alternatively, Barsom may be negligent for failing to consult the Accidental Death Unit's manual registration files.[7] Either way, a reasonable jury could conclude that Travelers should have known that the policy proceeds had been paid and that it negligently represented otherwise.
 
 3.
 
 28
 The third element of negligent misrepresentation requires that the representor intend to induce reliance. Travelers concedes that it intended the claim forms to induce action, but maintains that the intended action--the filing of a claim--is irrelevant to Souran's negligence claim. Travelers argues that it did not intend its mailing of the claim forms to induce Souran to believe that the policy proceeds had not been paid and to settle his suit against Duanita and Mr. Von Bergen. While this is surely true, it does not insulate Travelers from liability.
 
 
 29
 One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining the information.
 
 
 30
 Restatement (Second) of Torts § 552 (1977). A reasonable jury could conclude that Travelers intended Souran to act in a manner consistent with having an expectation of recovering the policy proceeds.
 
 4.
 
 31
 The fourth element of negligent misrepresentation requires that Souran justifiably relied on Travelers' representation. The facts strongly support this conclusion. In settling his wrongful death suit, Souran relied on Travelers' representation that Mrs. Von Bergen's policy proceeds had not been paid and remained available. Had this been true, Souran may have been entitled to recover either directly under the policy as the beneficiary's assignee (as Souran had alleged in count I) or as residuary beneficiary as Mrs. Von Bergen's heir (as Souran had alleged in count II).[8] A reasonable jury could conclude that Souran's reliance on Travelers' representation was justified. Hence, Souran presented a jury question as to all four elements of count III's negligent misrepresentation claim. Summary judgment was improper.
 
 B.
 
 32
 Souran also contends that Travelers failed to exercise due care when it failed to notify him that it had paid Mrs. Von Bergen's policy proceeds. Souran relied on this information by settling his state court suit against Duanita and Mr. Von Bergen and accepting a general assignment of proceeds on the Travelers policy. If Souran had known that Travelers had already paid the policy proceeds, Souran would have sought the proceeds as part of the settlement. The district court concluded that Travelers had no duty to inform Souran that it had paid the policy proceeds, that Travelers acted reasonably in sending out the claim forms, and summarily rejected Souran's argument. In its order granting summary judgment on count III, the court opined that "the suggestion that an issue of negligence is somehow presented by the fact that Travelers twice sent claim forms is so absurd that it cannot be maintained in good faith," and that "[n]o jury could conclude otherwise." We disagree.
 
 
 33
 First, a reasonable jury could find that Narducci's letter contained sufficient indicia of Souran's intention to file an accidental death claim that a reasonable person would have forwarded the letter to, or at least consulted with, the Accidental Death Unit. See Jacksonville Journal Co. v. Gilreath, 104 So.2d 865, 867 (Fla.Dist.Ct.App.1958) ("A person is also negligent if he fails to do that which a reasonable and prudent person would have done under the same or similar circumstances.").
 
 
 34
 Travelers maintains that it had no duty to inform Souran that it had paid the proceeds of Mrs. Von Bergen's policy. By sending out claim forms, however, Travelers did respond, and (a jury could find) implicitly represented that the proceeds remained available. Even if Travelers had no duty to respond, since it did respond, it incurred a duty to exercise due care. See Barfield v. Langley, 432 So.2d 748, 749 (Fla.Dist.Ct.App.1983) ("an action undertaken for the benefit of another, even gratuitously, must be performed in accordance with an obligation to exercise reasonable care"); Padgett v. School Bd. of Escambia County, 395 So.2d 584, 585 (Fla.Dist.Ct.App.1981) ("[T]he law imposes an obligation on everyone who attempts to do anything, even gratuitously, for another to exercise some degree of care and skill in the performance of what he has undertaken.").
 
 
 35
 Second, a reasonable jury could find that Barsom was negligent in relying solely on Travelers' computer for information on Mrs. Von Bergen's policy. In her deposition, Barsom testified that she knew Travelers' computer system did not go on-line until November 1986, one month after Travelers paid the policy proceeds to Mr. Von Bergen. Barsom also testified that she did not know whether, by April 1987, Travelers had input pre-November 1986 information into its computer system. Barsom's failure to inquire beyond her computer screen was particularly unfortunate because Travelers' payment of the policy was recorded in the Accidental Death Unit's manual files, not in the computer.
 
 
 36
 Conduct that rises to the level of negligence eschews formulaic construct. Determination of negligence tends to be a fact-intensive inquiry highly dependent upon the given circumstances.
 
 
 37
 What is reasonable is, as in other cases of negligence, dependent upon the circumstances. It is, in general, a matter of the care and competence that the recipient of the information is entitled to expect in the light of the circumstances and this will vary according to a good many factors. The question is one for the jury, unless the facts are so clear as to permit only one conclusion.
 
 
 38
 Restatement (Second) of Torts § 552 cmt. e (1977); see also Florida Power & Light Co. v. Lively, 465 So.2d 1270, 1273 (Fla.Dist.Ct.App.1985) ("The issue of breach of duty is often considered a question of fact for the jury, unless only one reasonable conclusion may be drawn from the facts in evidence."). Because the issue of Barsom's negligence presented a jury question, the district court improperly granted summary judgment on count III.
 
 III.
 
 39
 District courts may impose Rule 11[9] sanctions "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose." Pelletier v. Zweifel, 921 F.2d 1465, 1514 (11th Cir.1991); see also Mike Ousley Productions, Inc. v. WJBF-TV, 952 F.2d 380, 383 (11th Cir.1992); Harris v. Heinrich, 919 F.2d 1515, 1516 (11th Cir.1990). We review the district court's Rule 11 determinations for abuse of discretion. See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 397-406, 110 S.Ct. 2447, 2457-61, 110 L.Ed.2d 359 (1990).[10]
 
 
 40
 In its twenty-nine-page June 15, 1990 order, the district court delineated its reasons for imposing sanctions on Souran and his attorneys as to all three counts of the complaint.[11] We reject each of these reasons, and conclude that the court abused its discretion by imposing Rule 11 sanctions. We consider the imposition of sanctions as to counts I and II in subparts A and B, and as to count III in subpart C.
 
 A.
 
 41
 Rule 11's text clearly permits sanctions only if the objectionable court paper "is signed in violation of this rule." We follow the Supreme Court's lead and accord Rule 11 its plain meaning. See Business Guides v. Chromatic Communications Enter., Inc., 498 U.S. 533, ---, 111 S.Ct. 922, 928, 112 L.Ed.2d 1140 (1991); Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 122, 110 S.Ct. 456, 458, 107 L.Ed.2d 438 (1989). Unless a pleading has been signed in violation of Rule 11, sanctions are improper. Rule 11 unambiguously specifies that it is the signer, not the nonsigning client, who certifies, after reasonable inquiry, that the paper is factually and legally sufficient. Because Rule 11's text is "clear and unambiguous," our inquiry into the Rule's meaning is complete. See Business Guides, 498 U.S. at ----, 111 S.Ct. at 928; Pavelic & LeFlore, 493 U.S. at 122, 110 S.Ct. at 458.
 
 
 42
 In its order, the district court considered neither who signed each objectionable paper nor the reasonableness of the signer's belief as to the paper's factual and legal sufficiency. Instead, the court focused on the reasonableness of Souran's beliefs. In particular, the district court objected to Souran's allegation that his daughter died by accident, when he believed that she had been murdered. Yet, Zabak, not Souran, signed the papers filed in furtherance of counts I and II that the district court found worthy of sanction.[12] The district court incorrectly assessed whether Souran--not Zabak, the signer--had a good faith factual and legal basis for asserting counts I and II. Even if Souran believed that his claim was meritless--and the record does not establish that he did--Zabak's reasonable inquiry may have revealed that the claim was well grounded in fact and warranted by law. The district court simply does not discuss Zabak's perceptions.
 
 
 43
 We need not remand to the district court because the record reveals that Zabak's belief about the factual and legal sufficiency of Souran's complaint and subsequent pleadings was reasonable. See Debbie A. Wilson, Note, The Intended Application of Federal Rule of Civil Procedure 11: An End to the "Empty Head, Pure Heart" Defense and a Reinforcement of Ethical Standards, 41 Vand.L.Rev. 343, 373 (1988) ("The courts' inquiry focuses only on the merits of the pleading gleaned from facts and law known or available to the attorney at the time of filing. The court should determine objectively the propriety of sanctions without conducting an exploration of the attorney's subjective intentions.") (footnote omitted).
 
 
 44
 First, when he signed the complaint, Zabak knew that Travelers had already paid the policy proceeds to Mr. Von Bergen. This fact provides a sound basis for Zabak's belief that the Travelers policy was not void for fraudulent procurement or some other reason.
 
 
 45
 Second, the questionable handling of Narducci's letter cast doubt on Travelers' credibility. From Zabak's perspective, Travelers had first invited and then, months later, rejected Souran's claim. Absent a satisfactory explanation from Travelers, Zabak reasonably could have believed that litigation would best protect Souran's rights.
 
 
 46
 Third, prior to Judge Newcomer's grant of summary judgment on count III and imposition of sanctions as to all counts, two other district court judges had occasion to consider the merits of Souran's suit. Judge Carr denied Travelers' motion to dismiss Souran's complaint.[13] Zabak permissibly could perceive this denial as a signal to proceed. Later, Judge Green denied Souran's motion for summary judgment on count I, expressly acknowledging that "the factual question whether the insurance policy was obtain[ed] under fraud has yet to be resolved." These rulings suggest that Zabak's belief in the factual and legal sufficiency of the complaint was initially well founded, and that Souran's post-complaint pleadings were similarly warranted. Rule 11 sanctions were not proper. See Indianapolis Colts v. Mayor & City Council, 775 F.2d 177, 182 (7th Cir.1985) (In the Rule 11 context, "the fact that judges who have ruled on the merits of that pleading disagree provides significant evidence that the pleading was not frivolous or unreasonable.").
 
 
 47
 Neither Souran nor his attorneys are subject to Rule 11 sanctions unless the "pleading, motion, or other paper is signed in violation of [Rule 11]."[14] The district court did not consider whether Zabak, the signer, violated Rule 11. Hence, the court could not find that any paper was signed in violation of Rule 11, and abused its discretion by imposing sanctions.
 
 B.
 
 48
 Even if, contrary to Rule 11's plain meaning, the reasonableness of Souran's--not Zabak's--belief about the factual and legal sufficiency of counts I and II were the relevant inquiry, Rule 11 sanctions remain improper. The district court imposed sanctions with regard to counts I and II based on Souran's allegation that Mrs. Von Bergen died by accident and that he was entitled to recover the Travelers policy proceeds as either assignee or contingent beneficiary. The court found that these allegations compelled Travelers to incur large legal expenses to defend by proving both that Mr. Von Bergen had fraudulently procured the Travelers policy with the intention of arranging Mrs. Von Bergen's murder, and that Mr. Von Bergen did in fact arrange Mrs. Von Bergen's murder. In particular, the court imposed sanctions because (1) Souran's allegations conflicted with his belief, and (2) Travelers' absolute defense of fraudulent procurement rendered the complaint legally insufficient. Neither of these reasons support Rule 11 sanctions.[15]
 
 1.
 
 49
 The district court's first reason for imposing sanctions was that Souran alleged that Mrs. Von Bergen drowned by accident, a fact which he "believed to be false." The court found that Souran believed that Duanita and Mr. Von Bergen arranged to have Mrs. Von Bergen murdered. This finding is well supported in the record, uncontradicted by Souran, and irrelevant for two reasons.
 
 
 50
 First, Souran's complaint alleged that Mrs. Von Bergen died by "accident as contemplated by the Travelers insurance policy."[16] In Florida, death by murder constitutes accidental death for insurance purposes. Brown v. Life Ins. Co. of Va., 249 So.2d 79, 79-80 (Fla.Dist.Ct.App.1971) (the intentional killing of an insured is deemed "accidental" for insurance policies if the deceased did not foresee the killing).
 
 
 51
 Second, even if Souran believed that Mr. Von Bergen engaged in a murderous scheme to collect insurance proceeds, which if true would void the policy,[17] this would not merit Rule 11 sanctions. The facts are such that a reasonable jury could conclude that Travelers was liable under the policy. Perhaps most compelling in this regard is the fact that Travelers had already paid the policy proceeds to Mr. Von Bergen. Both Souran and his lawyers knew this when they filed the complaint. Despite his subjective belief about Mr. Von Bergen's evil scheme, Souran knew--not merely believed--that Travelers had already acquiesced to its liability on the policy.
 
 
 52
 Third, the evidence of fraudulent procurement is inconclusive. The court did not determine Mr. Von Bergen's intentions at the time he purchased the Travelers policy and they remain a mystery. In the July 16, 1986 settlement agreement, Mr. Von Bergen expressly denied that he had engaged in any wrongdoing in connection with his wife's death. No one has been charged or indicted for Mrs. Von Bergen's murder. Hence, whether Mr. Von Bergen purchased the Travelers policy intending to have Mrs. Von Bergen murdered must be resolved solely on conflicting circumstantial evidence. A reasonable jury could conclude that he did not.
 
 2.
 
 53
 The court concluded that counts I and II would not withstand Travelers' fraudulent procurement defense and sanctioned Souran and his lawyers because counts I and II were not warranted by law. Essentially, the court sanctioned Souran and his lawyers for filing a complaint to which they knew Travelers could assert a powerful defense. This was an abuse of discretion.
 
 
 54
 First, Travelers' prior payment of the policy strongly suggests that, as far as Travelers was concerned (and it should be concerned), the policy was valid. Travelers did not assert a fraudulent procurement defense to deny Mr. Von Bergen's claim in October 1986. The knowledge that Travelers previously had decided not to contest its liability on the policy should have encouraged, not discouraged, Souran and his lawyers to file suit. An unasserted defense is no defense at all.
 
 
 55
 Second, plaintiffs need not refrain from filing suit to avoid Rule 11 sanctions simply because they know that defendants will interpose an affirmative defense. Two other circuits have held that the assertion of a claim knowing that it will be barred by an affirmative defense is sanctionable under Rule 11. See Brubaker v. City of Richmond, 943 F.2d 1363, 1383-85 (4th Cir.1991); White v. General Motors Corp., 908 F.2d 675, 682 (10th Cir.1990). Here, however, Souran did not know that counts I and II would suffer defeat at the hands of Travelers' fraudulent procurement defense. "An attorney need not forbear to file her action if she has a colorable argument as to why an otherwise applicable affirmative defense is inapplicable in a given situation." White, 908 F.2d at 682. In no way do the facts unequivocally establish that Travelers' affirmative defense of fraudulent procurement would succeed. At most, the facts are inconclusive and present a jury question as to whether Mr. Von Bergen fraudulently procured the policy. In the face of such uncertainty, Rule 11 sanctions on counts I and II were not proper.
 
 C.
 
 56
 The district court sanctioned Souran, Fraley, Kelly, Zabak, and Mitchell as to count III. Because we reverse the grant of summary judgment on count III, we also reverse the imposition of Rule 11 sanctions on that count. See Donaldson v. Clark, 819 F.2d 1551, 1555 (11th Cir.1987) (en banc).
 
 IV.
 
 57
 We hold that the district court improperly granted summary judgment on count III in No. 90-3341, and, thus, remand that count for further proceedings. We also hold that the court abused its discretion by imposing Rule 11 sanctions as to all counts in No. 90-3703, and, accordingly, we reverse its decision.
 
 
 58
 IT IS SO ORDERED.
 
 
 59
 COX, Circuit Judge, concurring in the result in part and dissenting in part:
 
 
 60
 I concur in the result regarding Rule 11 sanctions imposed by the district court. I respectfully dissent from the majority's conclusion that George Souran has a meritorious claim against The Travelers Insurance Company for negligence or negligent misrepresentation. I find the claim in count III devoid of merit.[1]
 
 
 61
 Some confusion apparently exists about the cause of action that count III purports to state. Part II.A. of the majority opinion approaches the claim as one for negligent misrepresentation, while part II.B. analyzes it in terms of simple negligence. Either way, the claim fails.
 
 
 62
 The majority's primary focus on negligent misrepresentation is curious in light of Souran's failure to argue the theory before this court. Souran first asserted negligent misrepresentation in his memorandum to the district court opposing Travelers' motion for a directed verdict. (R.3-60.) In his other district court submissions and in his briefs to this court, however, Souran describes count III as sounding in common-law negligence. (E.g., Appellant's Br. at 12; R.1-16 at 8; R.2-43 Exh. A.) Historically, in Florida an action for negligent misrepresentation sounds in fraud rather than negligence. See Watson v. Jones, 41 Fla. 241, 255, 25 So. 678, 683 (1899); Ostreyko v. B.C. Morton Org., Inc., 310 So.2d 316 (Fla.Dist.Ct.App.1975). The difference is significant here because the district court found that Souran's negligent misrepresentation argument was untimely. (R.3-58 at 7, Order of Mar. 14, 1990.) Souran has not challenged the district court's order on this point.[2]
 
 
 63
 Assuming that Souran has presented a timely claim for negligent misrepresentation, the facts do not support it. The majority concludes that the sending of claim forms constituted a misrepresentation that the policy remained unpaid. I disagree.
 
 
 64
 A Florida statute required Travelers to send the claim forms. The statute provides that "[a]n insurer shall furnish, upon written request of any person claiming to have a loss under an insurance contract issued by such insurer, forms of proof of loss for completion by such person...." Fla.Stat.Ann. § 627.425 (West 1984). Significantly, Florida does not require an insurer to furnish claim forms only to the first claimant requesting them, but to "any person claiming to have a loss." Id. It is clear that in furnishing forms to Souran's attorney, Travelers was doing only what Florida law mandated that it do.
 
 
 65
 Moreover, another Florida statute provides:
 
 
 66
 (1) Without limitation of any right or defense of an insurer otherwise, none of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of any provision of a policy or of any defense of the insurer thereunder:
 
 
 67
 (a) Acknowledgement of the receipt of notice of loss or claim under the policy.
 
 
 68
 (b) Furnishing forms for reporting a loss or claim, for giving information relative thereto, or for making proof of loss, or receiving or acknowledging receipt of any such forms or proofs completed or uncompleted.
 
 
 69
 Id. § 627.426. Thus, if Travelers had a defense based upon its prior payment, it did not waive this defense by furnishing proof forms.
 
 
 70
 The majority declares that "[a] reasonable jury could find that by sending the claim forms, Travelers represented that Souran could sensibly expect that Travelers would seriously consider his claim to his daughter's policy proceeds." Maj. Op., supra p. 1503. This reasoning escapes me. What it apparently means is that by furnishing proof forms Travelers was saying that if you file a claim we will seriously consider waiving any defense predicated upon the argument that we have previously paid the proceeds to a person entitled to collect them. Such reasoning flies in the face of the Florida statute's nonwaiver provision. Furthermore, no evidence supports the inference that Travelers did not "seriously consider" Souran's claim under the policy. Souran's real problem would seem to be that he did not have a valid claim under the policy--a fact his attorneys acknowledged when they dismissed counts I and II.
 
 
 71
 The cryptic letter to Travelers from Souran's attorney included no request for information about the status of claims by others. Nevertheless, the majority sees an implicit misrepresentation by Travelers because the company gave Souran no more information than he requested and no less than the Florida statute requires.
 
 
 72
 Turning to the simple negligence theory, a great deal of the discussion in the parties' briefs focuses on the issue of whether Travelers owed a duty to Mr. Souran to advise him of its prior payment. Souran concedes that "there is no case which states unequivocally that an insurer has a duty to timely advise claimants who give it notice of a claim that the policy proceeds have been exhausted." (Appellant's Br. at 45.) Nevertheless, he asks this court to do what Florida courts and the Florida Legislature have not done, that is, to declare that the "public policy" of Florida requires an insurer to provide policy payment information to claimants who do not request it. (See id.) Why this would be good policy, Souran does not say.
 
 
 73
 The majority opinion dispenses with the duty question by observing that "[e]ven if Travelers had no duty to respond, since it did respond, it incurred a duty to exercise due care." Maj. Op., supra p. 1506. This overlooks the fact that Fla.Stat.Ann. § 627.425 required Travelers to send the claim forms. Travelers satisfied the statutory duty. There is no basis for holding that Travelers, as a matter of law, assumed yet a broader duty simply by fulfilling its statutory obligation.
 
 
 74
 The majority opinion also overlooks proximate cause, another essential element of Souran's claim. In a negligence action, proximate cause "is concerned with whether and to what extent the defendant's conduct foreseeably and substantially caused the specific injury that actually occurred." McCain v. Florida Power Corp., 593 So.2d 500, 502 (Fla.1992) (emphasis added). Although the precise manner or extent of the injury need not be foreseeable, "an injury caused by a freakish and improbable chain of events would not be 'proximate' precisely because it is unquestionably unforeseeable." Id. at 503. A defendant is held responsible for only that harm which "prudent human foresight would lead one to expect." Id. As with a simple negligence claim, proximate cause also is a key to recovery for negligent misrepresentation. See Alna Capital Assocs. v. Wagner, 758 F.2d 562, 565-66 (11th Cir.1985) (discussing Florida law); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 110, at 767 (5th ed. 1984).
 
 
 75
 What injury does Souran contend Travelers should have foreseen when it sent proof of loss forms? We find the answer on page 41 of Souran's brief: "Clearly, the harm that it could foresee was not necessarily that Mr. Souran would settle a lawsuit against Von Bergen without knowing the latter had already claimed the Travelers money, but that Mr. Souran was going to file a claim to the proceeds which would be denied." (Emphasis in original.)
 
 
 76
 It is certainly foreseeable that one requesting proofs of loss will file a claim; it is even foreseeable that a claim may be denied. But, Travelers had no reason to foresee that Souran would, after requesting proof of loss forms, enter into a settlement agreement with the beneficiary of the Travelers policy by the terms of which he would give value for an assignment of the policy and surrender any right to recover from Von Bergen the proceeds Von Bergen had already collected. "Prudent human foresight" would not have led Travelers to expect this kind of injury.
 
 
 77
 I agree with the district court's conclusion that count III lacks merit.
 
 
 
 [1]
 In addition to Travelers, several other insurance companies had issued a total of 32 insurance policies on Mrs. Von Bergen's life, all of which covered the time of her death
 
 
 [2]
 The letter states in full:
 April 3, 1987
 Traveler's Insurance Company
 
 
 [260]
 Constitution Plaza
 Hartford, CT 06103
 Attn: Individual Claims Dept.
 Re: Linda Von Bergen, deceased
 Policy PAK-6128001
 Late of: 7427 Make Drive
 Sea Pines, Fla.
 Gentlemen:
 This office represents Mr. George Souran and the other heirs of Linda Von Bergen.
 We understand that your firm has issued life insurance coverage on the life of said Linda Von Bergen.
 Please be advised that the heirs will be asserting claim to the proceeds in view of the circumstances of said Linda Von Bergen's death.
 Demand is made that no proceeds be disbursed until this issue is resolved.
 Further, I would appreciate your sending me a copy of any insurance on Mrs. Von Bergen's life and your Claimant's Statement.
 Yours very truly,
 /s/ W.A. Narducci
 W.A. Narducci
 WAN/am
 cc: Peter Kelley, Esq.
 
 
 [3]
 Travelers' motion sought sanctions against Souran, Shackleford, Farrior, Stallings & Evans, and Mitchell & Carter. Because Rule 11 sanctions may only be imposed on individual lawyers, not their law firms, Pavelic & LeFlore v. Marvel Entertainment Group, 493 U.S. 120, 122-128, 110 S.Ct. 456, 458-60, 107 L.Ed.2d 438 (1989), Judge Newcomer construed the motion as seeking sanctions against Souran and his individual lawyers, Fraley, Kelly, Zabak, and Mitchell
 
 
 [4]
 Souran argues that Judge Newcomer violated the 10-day notice requirement of Fed.R.Civ.P. 56(c) by both allowing Souran only one day in which to respond to the directed verdict motion, and not clearly indicating that the directed verdict motion would be considered as a summary judgment motion. Because we reverse the grant of summary judgment on other grounds, we need not address this argument
 
 
 [5]
 The district court referred to a magistrate the determination of the amount of Travelers' reasonable attorney fees and expenses. Travelers claimed that it had reasonably incurred nearly $300,000 in fees and expenses
 
 
 [6]
 The dissent suggests that Souran did not properly allege a negligent misrepresentation claim either below or here. While Souran's complaint and briefs may not be models of legal drafting, they do allege the requisite elements of a negligent misrepresentation claim. Paragraph 20 of count III of Souran's complaint and pages 33-34 of his initial brief in No. 90-3341, state the elements of a claim for negligent misrepresentation. Souran has consistently maintained that Travelers breached its duty to tell him the truth rather than mislead him into believing that the proceeds remained unpaid
 The dissent refers to the district court's finding that Souran's negligent misrepresentation claim was untimely. The district court found that Souran "cannot prove any of the elements of fraud or negligent misrepresentation" and, alternatively, that such claims were not timely. We disagree. Count III of Souran's complaint embraces a negligent misrepresentation claim, and, as we explain above, count III withstands Travelers' motion for summary judgment. Souran's allegations in count III certainly satisfy the lenient requirement of notice pleading. See Fed.R.Civ.P. 8(a) (1991).
 
 
 [7]
 In her deposition, Barsom indicated that she determined that Narducci's potential claim should remain in her department and not be forwarded to the Accidental Death Unity "because it did not indicate that there was an accidental death." Barsom Depo. at 15-16. Souran proffered the testimony of William Jones, a putative expert on the processing of insurance claims, to establish that Barsom negligently failed to recognize Narducci's letter as notice of an accidental death claim. The letter contains several indicia that support this position. The letter refers to (1) "Linda Von Bergen, deceased," (2) Mrs. Von Bergen's "heirs," (3) "life insurance coverage on the life of said Linda Von Bergen," and (4) Souran's impending claim "in view of the circumstances of said Linda Von Bergen's death." A reasonable jury could conclude that Barsom's determination was negligent
 
 
 [8]
 In a post-judgment motion for rehearing denied by the court, Souran proffered the testimony of William Jones, a putative expert in the field of insurance claims practices, to establish that (1) "it is the standard and reasonable practice in the insurance industry to inform claimants that the proceeds of a policy have been paid out, if such is the case, and not to send out claim forms," (2) claimants regularly rely on information supplied by insurance companies, and (3) Barsom's failure to recognize Narducci's letter as a claim for accidental death benefits "fell below the standard of reasonable care."
 
 
 [9]
 Fed.R.Civ.P. 11 provides in pertinent part that
 [t]he signature of an attorney or party constitutes a certificate by the signer that ... to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose.... If a pleading, motion, or other paper is signed in violation of this rule, the court ... shall impose upon the person who signed it, a represented party, or both, an appropriate sanction....
 
 
 [10]
 In Donaldson v. Clark, 819 F.2d 1551, 1556 (11th Cir.1987) (en banc), we established that "(1) factual or (2) dilatory or bad faith reasons" for imposing Rule 11 sanctions are "subject to review for abuse of discretion," while (3) "a decision whether a pleading or motion is legally sufficient involves a question of law subject to de novo review." After the Supreme Court held that Rule 11 sanctions are subject to a unitary abuse of discretion standard of review, see Cooter & Gell, 496 U.S. at 405, 110 S.Ct. at 2461, some panels in this circuit continued to review de novo the legal sufficiency for Rule 11 purposes of pleadings and other court papers. See, e.g., Aetna Ins. Co. v. Meeker, 953 F.2d 1328, 1331 (11th Cir.1992); In re Int'l Yacht & Tennis, Inc., 922 F.2d 659, 663 (11th Cir.1991). In contrast and true to Cooter & Gell, other panels have reviewed Rule 11 legal sufficiency for abuse of discretion. See, e.g., McGuire Oil Co. v. Mapco, Inc., 958 F.2d 1552, 1563 (11th Cir.1992); Pelletier, 921 F.2d at 1514; Davis v. Carl, 906 F.2d 533, 537 (11th Cir.1990)
 We now clarify that abuse of discretion is this circuit's standard for reviewing the legal sufficiency of court papers for Rule 11 purposes. As a practical matter, however, the abuse of discretion and de novo standards of review will yield substantially similar--if not exactly the same--results. "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." Cooter & Gell, 496 U.S. at 405, 110 S.Ct. at 2461.
 
 
 [11]
 The court correctly refrained from sanctioning Mitchell as to counts I and II because the first court paper that Mitchell filed after becoming Souran's lawyer deleted counts I and II from the complaint
 
 
 [12]
 On page 26 of its 29-page sanction order, the district court admitted that the order considered only whether the complaint merited sanctions, but noted that the complaint's positions had been reasserted in other pleadings. The court's exclusive focus on the complaint is particularly troubling given its reliance on such post-complaint discovery as party and nonparty depositions and document production. See Fed.R.Civ.P. 11 advisory committee's note ("The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.")
 
 
 [13]
 In its sanction order, the district court did not consider the effect of Judge Carr's ruling
 
 
 [14]
 Souran further contends that the district court lacked the authority to sanction him because he neither is an attorney nor signed any pleadings. Rule 11's plain language indicates otherwise. See Fed.R.Civ.P. 11 (court may sanction "the person who signed [the paper], a represented party, or both"); Fed.R.Civ.P. 11 advisory committee's note ("Even though it is the attorney whose signature violates the rule, it may be appropriate under the circumstances of the case to impose a sanction on the client."). But see Business Guides, 498 U.S. at --- - ---, 111 S.Ct. at 934-35 (noting that the Court has not determined "whether or under what circumstances a nonsigning party may be sanctioned"). Sanctions are not proper in this case, however, because no pleading was signed in violation of Rule 11
 
 
 [15]
 The court imposed sanctions for two additional reasons which we summarily reject. First, the court concluded that sanctions were proper because Souran was not entitled to recover the policy proceeds as his daughter's contingent beneficiary as alleged in count II. The record contains evidence on which Souran and his lawyers could predicate a good faith belief in Souran's right to recover. The insurance policy specified Mrs. Von Bergen's "Will" as the third policy beneficiary. Further, the complaint reasonably alleged that in case the court determined that Duanita and Mr. Von Bergen arranged for Mrs. Von Bergen's murder, their interests would be forfeited and Mrs. Von Bergen's estate would take as contingent beneficiary
 Second, the court took umbrage at Mitchell's voluntary dismissal of counts I and II on the eve of trial. This decision to dismiss, however, cannot be sufficient reason to sanction Fraley, Kelly, and Zabak. Mitchell's motive for dismissing counts I and II may reflect litigation strategy rather than the counts' frivolity. Further, the alternative places predecessor counsel in jeopardy of suffering Rule 11 sanctions based on successor counsel actions.
 
 
 [16]
 The court expressly recognized this point, noting that the question of how "Souran and his lawyers can claim that it was 'reasonable under the circumstances' to allege that Linda Rebstock Von Bergen 'drowned by accident as contemplated in the policy' " was "[c]entral to [its] inquiry."
 
 
 [17]
 In its order imposing Rule 11 sanctions, the court opined that Souran "had to believe" that he could not recover as assignee of the policy proceeds because he thought that Duanita and Mr. Von Bergen had fraudulently procured the Travelers policy. If Mr. Von Bergen purchased the Travelers policy intending to have Mrs. Von Bergen murdered, then the policy was void ab initio
 A life insurance policy is void ab initio if it is shown that the beneficiary procured the policy with an intention to murder the insured. Thus an insurer has the right to claim that a policy so procured is unenforceable, thereby avoiding payment of benefits.
 Lopez v. Life Ins. Co. of Am., 406 So.2d 1155, 1159 (Fla.Dist.Ct.App.1981) (citation omitted). Because fraudulent procurement is an absolute defense to Travelers' liability on the policy, and Souran believed that Mr. Von Bergen fraudulently procured the insurance, the district court imposed sanctions. The court concluded that Souran "knew that he could not prevail on the facts he believed to be true."
 
 
 [1]
 The majority does not reach Souran's argument that the district court violated the 10-day notice requirement for summary judgment under Federal Rule of Civil Procedure 56(c). Therefore, I do not address that issue here
 
 
 [2]
 The majority holds that the negligent misrepresentation claim was timely because count III of Souran's complaint "embraces" that theory of recovery. Maj. Op., supra p. 1503 n. 6. This holding misses the point: Souran has not appealed the district court's ruling that his negligent misrepresentation claim was untimely. Whatever the majority's view of the claim's timeliness, the issue is not properly before this court