406 So.2d 1155 (1981)
Jim F. LOPEZ, Appellant,
v.
LIFE INSURANCE COMPANY OF AMERICA, Appellee.
No. 80-1808.
District Court of Appeal of Florida, Fourth District.
November 4, 1981.
Rehearing Denied December 30, 1981.
*1156 Tomberg & Tomberg, P.A., Boynton Beach, and Thomas A. Hoadley of Hoadley & Gavigan, P.A., West Palm Beach, for appellant.
Marjorie D. Gadarian of Jones & Foster, P.A., West Palm Beach, for appellee.
HERSEY, Judge.
Jim F. Lopez appeals from an order dismissing his complaint with prejudice. Because of the unique circumstances involved in this case and the novelty of the legal issues raised, we set forth the complaint here in its entirety.
1. This is an action for damages in excess of Two Thousand Five Hundred ($2,500.00) Dollars.
2. At all times material hereto the Plaintiff was a resident of Palm Beach County, Florida; further at all times material hereto the Defendant was and is a foreign corporation, authorized and doing business in the State of Florida.
3. Between the years 1974 and 1977, the exact dates of which are unknown to Plaintiff but known to Defendant, the wife of the Plaintiff, to-wit: Gladys M. Lopez, contracted for life insurance coverage on her husband's life with the Defendant for policies containing double indemnity clauses in the following amounts:
(a) Policy No. 1369397, face value $55,000.00, double indemnity for accidental death;

*1157 (b) Policy No. 1499005, face value $50,000.00, double indemnity for accidental death;
(c) Policy No. 1214017, face value $20,000.00, double indemnity for accidental death; and
(d) Policy No. 1218774, face value $5,000.00, double indemnity for accidental death.
Therefore, the above policies had a face value of $130,000.00, but for an accidental death of the Plaintiff, the beneficiary, Gladys M. Lopez, would obtain the sum of $260,000.00. Gladys M. Lopez obtained the signature of her husband, the Plaintiff, on various applications by stating that she was obtaining accidental health insurance for him in case he would become injured, and the Plaintiff had no idea or suspicion that he was applying for life insurance.
4. At this time, the family net worth was zero and his income as a chef was approximately $9,000.00. The monthly premiums on the above life insurance policies amounted to about $622.00.
5. Several months prior to May 2, 1977, Mr. Lopez, the Plaintiff, overheard his wife and her brother-in-law plotting to kill him and he immediately called his insurance agent, who was an agent for the Defendant and reported overhearing a discussion about his death to collect the Life of Georgia life insurance and requested that any life insurance he might have had be cancelled.
6. The defendant negligently did not investigate these complaints and negligently failed to cancel the life insurance on the life of the Plaintiff.
7. On May 2, 1977, the Plaintiff was kidnapped by his wife, Mrs. Lopez, and her brother, James Miller, along with William R. Meloy and Henry A. Walters. These abductors took the Plaintiff in the back of the truck to near 20 mile bend and they bound his hands, forced whisky down his throat and were about to drown him when a deputy sheriff discovered him and rescued him prior to his death.
8. The defendant was negligent in writing an excessive amount of whole life insurance coverage plus double indemnity on the life of JIM F. LOPEZ considering the income of the family.
9. The Defendant did not make a proper investigation into the background and income of the Lopez family to determine whether or not they were financially able to carry such an excessive amount of insurance coverage and if they had exercised a reasonable caution in such an investigation, they would have learned that the premiums almost equalled the income of the family, which in turn should have made the Defendant suspicious that this excessive life insurance was done for the express purpose of killing Mr. Lopez and collecting his life insurance.
10. The Defendant further was negligent in failing to take any action to investigate the warning of the Plaintiff that the beneficiary of these policies was entering into a conspiracy to take his life to collect his insurance.
11. As a result of the attempt on his life on May 2, 1977, the Plaintiff was injured, necessitating medical expenses and a permanent injury.
12. Defendant's conduct as aforedescribed, was fraudulent, oppressive, malicious, and outrageous towards Plaintiff, with conscious disregard of Plaintiff's safety and with the intention of benefiting Defendant financially and done with the intent of causing, or with willful disregard to the probability of causing, severe physical and emotional distress to Plaintiff.
13. The aforesaid acts of the Defendant did, in fact, cause Plaintiff to suffer great mental anguish, upset and harm.
14. As a direct and proximate result of the aforementioned acts of Defendant, Plaintiff became upset and nervous and disturbed in body and in mind. Plaintiff has also suffered great mental and physical anguish, all to their damage in excess of compensatory damages of Twenty Five Hundred ($2500.00) Dollars, plus punitive damages in excess of One Million ($1,000,000.00) Dollars.

*1158 WHEREFORE, Plaintiff demands judgment against Defendant in an amount in excess of Two Thousand Five Hundred ($2,500.00) Dollars, together with punitive damages in an amount on [sic] One Million ($1,000,000.00) Dollars, plus costs, interest and attorneys' fees, and further, Plaintiff demands a trial by jury.
Before attempting to assess the actionability vel non of the alleged acts and omissions of appellee, insurer, it seems appropriate to orient the issues within the applicable procedural law. In doing so, we dispose of several arguments advanced by appellee in support of its position.
A motion to dismiss for failure to state a cause of action is addressed solely to the allegations of the complaint. Geer v. Bennett, 237 So.2d 311 (Fla. 4th DCA 1970). Those allegations well pleaded must be taken as true for purposes of determining whether the motion should be granted. Hammonds v. Buckeye Cellulose Corp., 285 So.2d 7 (Fla. 1973). The sole question to be determined by the trial court is whether or not the complaint states a cause of action. Rice v. White, 147 So.2d 204 (Fla. 1st DCA 1962). This is a question of law. Geer v. Bennett, supra.
The insurance company argues first that appellant's wife had an insurable interest, that appellant consented to issuance of the insurance and that, consequently, it cannot be liable under these circumstances. The complaint, on the other hand, alleges in pertinent part: "the Plaintiff [Appellant/insured] had no idea or suspicion that he was applying for life insurance." Whether appellant knowingly executed applications for life insurance, as suggested by appellee, or was misled by his wife to believe that he was applying for accidental medical health insurance, as suggested by the complaint, is a factual issue not properly before the court for determination on a motion to dismiss. For purposes of this appeal we are bound to assume that the insured was misled and that there was no consent to issuance of insurance on his life.
Appellee next argues that the intervening criminal act involved here was not foreseeable, "especially ... when the insurer has used reasonable care in issuing the policy." Reserving discussion of foreseeability for the present, we point out again that a factual determination is called for and assumed by appellee's reliance on due care. The allegations of the complaint could, under no interpretation, be said to establish as a matter of law that the insurer proceeded with reasonable care under the circumstances.
We are thus led inexorably to the crucial issue involved in this appeal: whether the insurer owed a duty of care to the insured and whether that duty was breached to the damage of the insured. The presence and complexity of collateral issues will appear from our subsequent discussion of the central and determinative question.
The complaint alleges breaches of several duties. We find it necessary to examine only one.
Florida law requires that an individual contracting for insurance on the life of another have an insurable interest. § 627.404 Fla. Stat. (1979). The obvious purpose of that requirement is to prevent so-called "wagering" contracts. It is assumed that the existence of such an insurable interest will counterbalance any temptation that might otherwise exist for a beneficiary to murder the insured for the insurance proceeds. That assumption may be ill-founded, however, if the amount of the proceeds vastly exceeds the value of the insurable interest. We find neither statute nor case law in Florida addressing the question of whether consent of the insured is a prerequisite to the obtaining of insurance by another having an insurable interest in the insured's life. In view of the paramount interest of the insured in the continuance of his own life it would appear that obtaining his consent before issuing a policy that might well constitute a motive for murder would not be an unreasonable requirement. At least one jurisdiction has imposed such a condition precedent.
*1159 In Ramey v. Carolina Life Insurance Co., 244 S.C. 16, 135 S.E.2d 362 (1964), an insured sued an insurer for injuries sustained when his wife attempted to murder him by arsenic poisoning. The insurer had issued a life insurance policy, without the insured's knowledge or consent, naming the insured's wife as beneficiary. The wife had forged the insured's name on the application and such forgery was known to the insurer. In holding that the insured could maintain a cause of action for negligent issuance of the policy, the court stated that an insurer has a duty to use reasonable care not to issue a policy of life insurance in favor of a beneficiary who has obtained such policy without the knowledge or consent of the insured, regardless of the presence of an insurable interest. We expressly approve the rule enunciated in Ramey.
Thus, appellee had a duty, at the time application was made for insurance of appellant's life, to use due care that such application was being made with the knowledge and consent of the insured. We take the term "knowledge and consent" to mean an informed consent by one who understands the nature of the entire transaction. Thus such factors as forged applications, signatures obtained under false pretenses and the like, become questions of fact to be determined at the appropriate stage of the litigation. At least in the present case the allegations of the complaint do not invite disposal of the issue on motion to dismiss.
Concluding this aspect of our examination of the issue we hold that an insurer has a duty to its insured not to issue a life insurance policy, even to one having an insurable interest, without the knowledge and consent of the insured.
Assuming, arguendo, that no breach of duty occurred at the time the life insurance policy was originally applied for and issued, there remains the issue raised by the allegation of a subsequent breach of that same duty.
A life insurance policy is void ab initio if it is shown that the beneficiary procured the policy with an intention to murder the insured. New England Mutual Life Ins. Co. v. Null, 605 F.2d 421 (8th Cir.1979). Thus an insurer has the right to claim that a policy so procured is unenforceable, thereby avoiding payment of benefits. The logical correlative duty imposed on an insurer, if it later learns of the illegal purpose of the insurance contract, requires that the contract be immediately cancelled as being void and unenforceable so as not to be unjustly enriched by future premium payments and, more importantly, so as not to endanger the life of the insured.
Such circumstances are alleged in the complaint here. The finder of fact may ultimately determine that the insurer did not breach its duty in this regard because it took certain actions or because it could not legally cancel the policy on these facts or on some other basis, but these are not questions properly before the court on the motion to dismiss.
Appellee takes the position that even if the insurer has the duty we have discussed at length, the criminal actions which damaged appellant do not give rise to a cause of action against appellee for two reasons.
First, appellee contends that the intervening criminal act breaks the chain of causation between the original actor's negligence and the resulting injury. This is seen as a function of foreseeability which, in turn, relates directly to proximate cause. Thus, if the criminal act of attempted murder was reasonably foreseeable as a consequence of issuance of the policy on appellant's life without his knowledge and consent, then issuance of the policy was a proximate cause of appellant's peril and consequent damages. The insurance company insists that the intervening criminal act was not reasonably foreseeable. Our previous discussion of policy and the allegations of the complaint would indicate to the contrary. Be that as it may, however, foreseeability is a question for the finder of fact not appropriately disposed of by motion to dismiss unless the allegations themselves are deficient in stating the cause of action. Gibson v. Avis Rent-A-Car System, Inc., 386 So.2d 520 (Fla. 1980).
*1160 Second, appellee relies on Claycomb v. Eichles, 399 So.2d 1050 (Fla. 2d DCA 1981) for the proposition that damages may not be recovered for mental anguish or physical injury resulting from emotional stress which is caused by negligence where there is no physical impact. We neither subscribe to nor repudiate that proposition here. We simply refer again to the complaint which alleges that appellant was tied up in the back of a truck while whiskey was poured down his throat. Either or both of those occurrences constitute a sufficient "physical impact" to sustain the complaint against attack on this basis.
Accordingly, we reverse the order which dismissed appellant's complaint with prejudice and remand this cause for further proceedings in accordance with this opinion.
REVERSED AND REMANDED.
LETTS, C.J., and MOORE, J., concur.

ON REHEARING
PER CURIAM.
We adhere to our original opinion but certify to the supreme court the following question as one of great public interest:
Whether an insurer issuing a life insurance policy can be liable in tort to the insured where the policy beneficiary attempts to murder the insured in order to collect the policy benefits?
We pose the question in the language requested by counsel recognizing that it is overbroad, but confident that the language of our original opinion will bring it into appropriate focus.
LETTS, C.J., HERSEY and DELL, JJ., concur.