900 So.2d 656 (2005)
Edward RICHARDSON, Appellant,
v.
Jean S. RICHARDSON, Appellee.
No. 2D04-551.
District Court of Appeal of Florida, Second District.
April 1, 2005.
Rehearing Denied May 16, 2005.
*657 Thomas D. Casper, Tampa, for Appellant.
Herbert W. Fiss, Jr., of Herb Fiss, P.A., Tampa, for Appellee.
STRINGER, Judge.
Edward Richardson, the Former Husband, seeks review of the supplement to a partial final judgment of dissolution of marriage which determined several issues regarding equitable distribution of the parties' pensions and security for the alimony award to Jean S. Richardson, the Former Wife. We reverse for a new trial because the trial court abused its discretion in failing to grant the Former Husband's motion for a continuance.
The trial court entered a partial final judgment of dissolution of the parties' nineteen-year marriage by stipulation of the parties on June 19, 2003. The partial final judgment provided that the Former Wife would have the primary residential care of the parties' minor children subject to the Former Husband's rights of visitation and access. The Former Wife was *658 awarded permanent periodic alimony in the amount of $2000 per month. Child support was established pursuant to the Florida Child Support Guidelines at $1424 per month. Both awards were based on the Former Husband's annual income of $102,000 as a special agent with the FBI and the Former Wife's annual income of $7500 from her part-time employment. In addition there was an agreed-upon equitable division of the tangible personal property, provision for disposition of the marital home, and an equitable division of marital debt.
By agreement of the parties, the trial court reserved jurisdiction on the remaining issues for resolution at a subsequent bifurcated hearing. The parties subsequently resolved the reserved issues pertaining to the division of their IRAs, the Former Wife's 401k plan, the Former Husband's Thrift Savings Plan, real estate they held as tenants in common, and the American Express annuity. The issues remaining for resolution by the court were:
(a) a determination of the Former Wife's portion of the Former Husband's FBI pension and the Former Husband's portion of the Former Wife's pension with Delta Airlines; and
(b) the Former Wife's request for the Former Husband to maintain life insurance to secure payment of alimony and child support.
A final hearing on the bifurcated issues was scheduled for August 6, 2003. The trial court subsequently granted each party a continuance, and the trial was ultimately rescheduled for November 12, 2003.
The order on pretrial conference required that all exhibits to be used at trial be exchanged seven days prior to the trial date, and the parties agreed to extend that deadline to November 7, 2003, which was the Friday before the Wednesday trial. The parties were using a Qualified Domestic Relations Order (QDRO) to distribute the Former Wife's Delta pension and a Court Order Acceptable for Processing (COAP) to distribute the Former Husband's FBI pension, but the QDRO and COAP exhibits prepared by the Former Wife's expert were not provided to the Former Husband's attorney until noon on Monday, November 10, 2003, one business day before trial.[1]
At the start of the trial, the Former Husband's attorney moved for a continuance or bifurcation of the issues regarding the QDRO and COAP for the reason that he did not have sufficient time to review the documents with his client or his expert, much less to prepare a rebuttal to them. The court denied the motion, and the court proceeded to hear evidence and argument regarding the bifurcated issues. The Former Husband renewed the motion at the conclusion of the trial.
The court subsequently entered a supplement to the partial final judgment of dissolution of marriage. The supplement accepted the Former Wife's proposed QDRO and COAP, along with the proposed order for entry of the QDRO and COAP.[2] The COAP and court order for entry of QDRO and COAP regarding division of the Former Husband's retirement included the following requirements:

*659 (a) that the marital portion of the Former Husband's pension be valued at the time of the Former Husband's retirement, which would include salary increases earned after the marriage terminated;
(b) that the Former Husband name the Former Wife for the maximum survivor benefit of his pension and that he pay half the cost of this benefit;
(c) that the Former Husband pay half the cost of the premium on an unspecified amount of insurance on his life should the Former Wife voluntarily remarry before reaching fifty-five years of age.[3]
We note that the supplement to the partial final judgment, which was rendered on November 19, 2003, did not expressly incorporate the Former Wife's QDRO, COAP, and the proposed order for entry of the QDRO and COAP. This provides jurisdictional problems for the review of these documents, which were not even entered in the record until some time after the Former Husband filed his notice of appeal.
The supplemental final judgment also granted the Former Wife's request for life insurance to secure the alimony award by ordering the Former Husband to maintain $500,000 of insurance on his life with the coverage to continue until the death or remarriage of the Former Wife.
On appeal, the Former Husband challenges (1) the trial court's denial of his motion for a continuance, (2) the distribution of the Former Husband's pension, and (3) the requirement that the Former Husband maintain life insurance to secure payment of alimony. We conclude that the trial court abused its discretion in denying the Former Husband's motion for a continuance, and we reverse and remand for a new trial.
This court reviews the denial of a continuance for an abuse of discretion. Fasig v. Fasig, 830 So.2d 839 (Fla. 2d DCA 2002). The court ordered the parties to exchange any documents or exhibits upon which their testimony would be based not less than seven days before the date of trial. The Former Husband agreed to extend that date for the service of the Former Wife's QDRO and COAP exhibits to the Friday before trial, or November 7, and it is undisputed that the Former Wife did not provide the exhibits until November 10, one business day before trial.
The Former Husband explained to the court that QDROs and COAPs are a very complicated subject matter and that he needed to confer with his expert before he could properly examine the Former Wife's expert. He was prevented from doing this when the Former Wife presented the exhibits for his review one day before trial, and the trial court abused its discretion in refusing to grant a continuance.
We therefore reverse and remand for a new trial on the issues reserved in the partial final judgment that have not been resolved by agreement. Our reversal based on the trial court's denial of the Former Husband's motion for a continuance renders the remainder of the Former Husband's issues moot. However, because these issues are likely to recur on remand, we will address them to offer the court some guidance in this complicated area of the law.

Marital Portion of the Pensions
A pension benefit earned by one spouse is jointly acquired property to the extent that it was earned during the marriage. *660 Diffenderfer v. Diffenderfer, 491 So.2d 265, 267 (Fla.1986). In this case, the parties agreed to have their pensions distributed via the "deferred distribution" method as explained by this court in Trant v. Trant, 545 So.2d 428, 429 (Fla. 2d DCA 1989).
Under this approach, the court determines what the employee's benefit would be if he retired on the date of the final hearing without any early retirement penalty. Id. The court then multiplies this dollar amount by the percentage to which the other spouse is entitled. This method yields a fixed dollar amount which the spouse receives from each of the employee's pension payments after retirement. Id.
In this case, the Former Wife's expert calculated her portion of the Former Husband's pension based on what the benefit would have been at his retirement. This calculation is erroneous because it includes contributions the Former Husband makes to the pension after the dissolution of the parties' marriage. See Boyett v. Boyett, 703 So.2d 451, 453 (Fla.1997); see also Giovanini v. Giovanini, 894 So.2d 275 (Fla. 1st DCA 2004) (reversing pension award and remanding for recalculation based on pension's value on date of dissolution); Olsen v. Keefer, 714 So.2d 1165, 1166 (Fla. 1st DCA 1998) (reversing award of pension benefits for a redetermination without considering contributions made after dissolution under Boyett).

Survivor Benefits on the Former Husband's Pension
The COAP awards the Former Wife the maximum survivor benefit, which is fifty percent of the total accrued benefit at retirement. See 5 C.F.R. §§ 838.711, 842.613, 843.102 (2002). This award is based on the Former Wife's share of the pension as determined in her COAP. However, the survivor benefit should not exceed the Former Wife's pension benefit as calculated pursuant to Boyett.
The supplemental final judgment also requires the Former Husband to pay half the cost of the survivor benefits, which is a percentage reduction of the total monthly benefits at retirement. Similarly, the court required the Former Husband to pay half the cost of the premium on an unspecified amount of life insurance in the event the Former Wife voluntarily remarries before reaching fifty-five years of age. We note that it is unusual for a court to require a spouse to pay to insure an asset distributed to the other spouse during equitable distribution. However, such a requirement may not constitute an abuse of discretion if the trial court makes findings that would justify it.

Insurance as Security for Alimony
Section 61.08(3), Florida Statutes (2002), authorizes the trial court to require an obligated spouse to purchase or maintain life insurance "[t]o the extent necessary to protect an award of alimony." Under section 61.08(3), a court may require an obligated spouse to purchase or maintain life insurance to secure any arrearage owed or "to protect the financial well being of the other spouse" by providing for payment of the entire policy proceeds upon the obligor spouse's death. Sobelman v. Sobelman, 541 So.2d 1153, 1154 (Fla.1989).
The supplemental final judgment required the Former Husband to maintain $500,000 of insurance on his life with the coverage to continue until the death or remarriage of the Former Wife. However, the judgment does not reflect whether the amount paid would simply account for any arrearage owed by the Former Husband or whether the entire policy proceeds *661 would be paid to the Former Wife upon the Former Husband's death. The supplemental final judgment does not contain any explanation of the purpose of the insurance requirement, except that it is "to secure payment of alimony." The trial court must specify the method by which the insurance proceeds are to be paid if it requires an obligated spouse to maintain life insurance to secure alimony. Kearley v. Kearley, 745 So.2d 987, 988-89 (Fla. 2d DCA 1999).
Furthermore, there must be "special circumstances" that support the requirement that an alimony award be secured by insurance. Solomon v. Solomon, 861 So.2d 1218, 1221 (Fla. 2d DCA 2003); Ruberg v. Ruberg, 858 So.2d 1147, 1156-57 (Fla. 2d DCA 2003).
Such special circumstances include a spouse potentially left in dire financial straits after the death of the obligor spouse due to age, ill health and/or lack of employment skills, obligor spouse in poor health, minors living at home, supported spouse with limited earning capacity, obligor spouse in arrears on support obligations, and cases where the obligor spouse agreed on the record to secure an award with a life insurance policy.
Alpha v. Alpha, 885 So.2d 1023, 1034 (Fla. 5th DCA 2004) (footnotes omitted).
The record in this case is devoid of these "special circumstances." It does not appear that the Former Wife will be left in dire straits upon the Former Husband's untimely demise because the Former Wife was awarded substantial survivor benefits on the Former Husband's pension. Additionally, there was no evidence that the Former Wife was in ill health or unemployable; at the time of the hearing the Former Wife had procured employment with the school system and was earning $3024 per month. The Former Husband was only forty-nine years old, and there was no evidence that he was in poor health. While there were minors living at home, the youngest of these was twelve years old. Moreover, there was no evidence that the Former Husband was in arrears on his support obligation. While the Former Husband admitted in his answer to the petition for dissolution that he would provide life insurance to secure the Former Wife's alimony award, the trial court permitted the Former Husband to argue against the insurance requirement below.
Additionally, the court failed to make specific findings regarding the Former Husband's ability to pay the cost to insure the alimony obligation. In order to support an obligation to maintain insurance to secure alimony, there must be evidence in the record and findings by the court regarding the cost of the insurance and the obligor's ability to pay it. Sobelman, 541 So.2d at 1154 n. 2; Zangari v. Cunningham, 839 So.2d 918, 920 (Fla. 2d DCA 2003); O'Connor v. O'Connor, 782 So.2d 502, 505 (Fla. 2d DCA 2001).
In this case, the trial court heard evidence regarding the current premium charged on the insurance and the Former Husband's income. At the time of trial, the Former Husband was already paying $3000 annually for a $1,000,000 life insurance policy ($250 per month), and the court ordered him to maintain a $500,000 life insurance policy to secure alimony. However, the Former Husband, who was forty-nine years old, offered unrefuted testimony that his premium would triple at age fifty, increase nine times at age fifty-five, and increase fourteen times at age sixty. The Former Husband testified that he intended to cancel his $1,000,000 life insurance policy at age fifty because of the increasing premiums.
*662 The trial court made no findings regarding the Former Husband's ability to pay these increased premiums or the need for the $500,000 amount. On remand, the trial court should consider the Former Husband's ability to pay in determining the amount of life insurance, if any, required to secure his alimony obligation.
Reversed and remanded.
ALTENBERND, C.J., and DAVIS, J., Concur.
NOTES
[1] November 11, 2003, was a national holiday, Veteran's Day, and did not count in the time computation. Fla. R. Civ. P. 1.090(a).
[2] The court accepted the QDRO, COAP, and proposed order for entry of the QDRO and COAP subject to their being modified to reflect a change in the formula for computing the marital portion so that the parties' service prior to the marriage was not included in the marital portion.
[3] The Former Husband's pension plan can preclude a wife who remarries before age fifty-five from eligibility for survivor benefits.