STONE, J.
The former husband petitioned to modify the life insurance provisions of the parties’ settlement agreement incorporated into a 1995 dissolution judgment. The for *762 mer husband appeals three orders: (1) an April 14th emergency order on the former wife’s emergency motion for relief; (2) an “agreed” order of dismissal entered following an April 20th hearing, and (3) an order denying the former husband’s motion for rehearing with regard to the dismissal entered pursuant to the “agreed” order. We reverse the order of dismissal and order denying rehearing and remand for an evi-dentiary hearing on the merits with respect to the parties’ intent as to the former wife’s interest in maintaining the insurance. Concerning the emergency order, we affirm for reasons unrelated to the ultimate merits, without accepting the trial court’s interpretation of the parties’ agreement.
The former husband asserts that the former wife no longer has an insurable interest in his life. He bases his petition on (1) the fact that one child has become emancipated, reducing his child support obligation, and (2) the former wife has remarried, ending his alimony obligation. The petition alleged that the former wife had procured an insurance policy on his life for $1 million, in addition to a $500,000.00 life insurance policy he continued to maintain as required by their agreement. The former husband’s remaining child support obligation at the time of filing totaled slightly over $31,000.00.
The former wife moved to dismiss for failure to state a cause of action, claiming that she has an insurable interest in his life as provided her by the plain language in the settlement agreement which, once granted, became vested. She also questioned the former husband’s standing to ask the court for what is essentially a declaratory judgment on the issue of her insurable interest.
Subsequent to the former husband’s petition, the former wife filed an emergency motion for relief, asking that the former husband be ordered to execute certain documents required by the insurer in order to reinstate a $1 million policy which lapsed for her non-payment of a premium. The trial court heard the former wife’s emergency motion on a motion calendar the day before the insurance company’s grace period was to expire. Attorneys for both parties were present, as was the former wife; the former husband did not attend.

Order on the former wife’s emergency motion for relief:

At the emergency hearing, the former husband’s attorney relied on the language of the document itself and the reference to the child support/alimony obligation in the life insurance provision. The agreement provides:
The Husband shall maintain, at his sole expense, a life insurance policy providing death benefits to the Wife of $500,000.00 so long as he shall be obligated to pay either alimony and/or child support. To the extent that the Husband’s obligation to pay alimony and/or child support falls below $500,000.00, then he shall have the right to reduce the available coverage to the extent necessary to fully insure the remaining payments of alimony and/or child support. Further, if the Husband chooses not to reduce the death benefit, he may designate any beneficiary he so chooses for the excess. In determining what is necessary, the procedure will be to determine what amount of lump sum (at an interest rate of 6%) will be to amortize the outstanding balance.
By execution of this Agreement, the Husband recognizes the Wife’s insurable interest in his life and authorizes the Wife to secure a policy or policies of life .insurance on the Husband’s life as she deems appropriate.... Any expense at *763 tendant to the policies secured by the Wife shall be hers alone.
The former husband’s attorney also stated to the court that “no matter what order you enter right now, there would have to be a determination at some time when there’s a full hearing as to what was the intent of this paragraph in the agreement, unless the court can say there’s no ambiguity at all, what it was intended for.” The former wife’s counsel responded that he did not see the need to hold further hearings and that he was “moving to enforce the terms of the agreement.”
The trial court pronounced its emergency ruling that the former husband sign the documents needed to prevent a termination of the former wife’s $1 million policy. The trial court also decided that the provision of the agreement recognizing the former wife’s “insurable interest” in the former husband’s life was unambiguous, that the former wife’s interest was open-ended, and that it was not modifiable. The court stated:
Looking at the plain language on page 11, there is no evidence required of intent. The language is pretty clear. The husband recognized an insurable interest, and he authorizes the wife to secure a policy or policies. And the word policies sits very strongly with this court. If we were sitting here and she were asking for a second policy, it would be in the same vein as a renewal or a reinstatement because it didn’t limit it to one policy. But if it limited it to one policy, I may have interpreted it differently.
It also says as she deems appropriate, which means it leaves the amount and the kind of insurance up to the wife. It doesn’t have any time deadline on it with regards to tying it to anything. It’s just open-ended insurable interest.
We conclude, however, that in the context of the contract as a whole, the agreement is ambiguous as to any insurable interest in the former husband’s life at such time as the support obligations terminate. “In reviewing the contract in an attempt to determine its true meaning, the court must review the entire contract without fragmenting any segment or portion.” J.C. Penney, Inc. v. Koff, 345 So.2d 732, 735 (Fla. 4th DCA 1977). The life insurance provisions fall in the beginning of the agreement, after alimony and child support, before health insurance and medical bills for both the former wife and children, and quite a bit before equitable distribution. This suggests that the life insurance is not intended as a component of the property distribution scheme, as the former wife suggests, but, instead, is intended solely to protect the support interest. There is no mention of an insurable interest in the equitable distribution scheme.
“The intention of the parties must be determined from an examination of the whole contract and not from the separate phrases or paragraphs.” Lalow v. Codorno, 101 So.2d 390, 393 (Fla.1958). The former husband’s obligation to maintain life insurance is directly tied to his responsibility to provide for his children and the former spouse. There is no reason to assume that the former wife’s interest in procuring life insurance does not flow from the same intention. To automatically accept the interpretation urged by the former wife inserts a property interest into a section devoted to protection of support. Further, an interpretation of the former wife’s insurable interest as limited to protection of support is bolstered by the fact that his original obligation was far in excess of the $500,000.00 he was required to maintain, thereby allowing the former wife *764 an option to procure insurance to protect this excess at her expense.
Accepting the former wife’s construal of her insurable interest creates a situation where she has a greater interest in a windfall she would enjoy at his demise than her interest in his continued life. Generally, this type of “wagering contract is against the public policy of the State of Florida.... ” Knott v. State ex. rel. Guar. Income Life Ins. Co., 136 Fla. 184, 186 So. 788, 790 (1939).
Florida law requires that an individual contracting for insurance on the life of another have an insurable interest, s. 627.404 Fla. Stat. (1979). The obvious purpose of that requirement is to prevent so-called ‘wagering’ contracts. It is assumed that the existence of such an insurable interest will counterbalance any temptation that might otherwise exist for a beneficiary to murder the insured for insurance proceeds. That assumption may be ill-founded, however, if the amount of the proceeds vastly exceeds the value of the insurable interest.
Lopez v. Life Ins. Co. of America, 406 So.2d 1155, 1158 (Fla. 4th DCA 1981). The Lopez court went on to hold that “an insurer has a duty to its insured not to issue a life insurance policy, even to one having an insurable interest, without the knowledge and consent of the insured.” Id. at 1159.
We recognize that, although Florida law is silent on exactly when the insurable interest must exist, in key-man policies it is only necessary that the interest exist at the time the insurance was secured. McMullen v. St. Lucie County Bank, 128 Fla. 745, 175 So. 721, 722 (1937). However, a Texas case tells us that in life insurance, an insurable interest must exist at inception of contract, but must also be continuing. Roberts v. Southwestern Life Ins. Co., 244 S.W.2d 302, 306-07 (Tex.Civ.App.1951). “A policy cannot be beneficially owned by one divorced spouse on the life of the other on the basis of past relationship.” Id. at 307. The situation sub judice is further complicated by the fact that the former wife let her policy lapse. For all intents and purposes, the insurance company’s insistence on the former husband’s signature indicates that her right to reinstate would be determined as of time of re-issuance.
It is not easy to define with precision what will in all cases constitute an insurable interest, so as to take the contract out of the class of wager policies. It may be stated generally, however, to be such an interest, arising from the relations of the party obtaining the insurance, either as a creditor of or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life.... The natural affection in cases [of family ties] as operating more efficaciously — to protect the life of the insured than any other consideration.
Warnock v. Davis, 104 U.S. 775, 779, 26 L.Ed. 924 (1881). In the case at bar, affection and family ties are not apparent so as to impute an insurable interest to the former wife; any interest she has arises only via the contract.

“Agreed” order on the former wife’s motion to dismiss:

We read the “agreed” order as simply recognizing that the former husband could seek rehearing as to the trial court’s rulings on both the emergency and dismissal by a consolidated argument. We, therefore, review the merits of dismissing the case for failure to state a cause of action. Our standard of review is de novo and is limited to the four corners of the petition, accepting the facts alleged as true with all *765 reasonable inferences drawn in favor of the former husband. Regis Ins. Co. v. Miami Mgmt., Inc., 902 So.2d 966, 968 (Fla. 4th DCA 2005).
The former husband’s petition asserts that the parties’ intent in allowing the additional life insurance was for the purpose of securing the support obligation in excess of the life insurance policy he owned, the agreement is modifiable on this point, the former wife has a $1 million policy on his life, he is uncomfortable with this fact, the former wife has financial motive to do him harm, and the couple’s relationship has been strained and absent affection. Taken as true, the petition states a triable cause of action.

Order denying the former husband’s motion for rehearing:

The former husband filed a detailed motion for rehearing, seeking rehearing of both the emergency motion and the motion to dismiss. The former husband asserted that, in dismissing the case, the court failed to consider the totality of the insurance provisions and the intent of the parties at the time of execution of the agreement. The trial court denied the motion for rehearing, concluding that the former husband was merely re-arguing the case and expressing displeasure with the trial court’s earlier interpretation.
We reverse the order of dismissal and order denying rehearing and remand for an evidentiary hearing on the merits of the petition and to permit evidence with regard to the parties’ intent.
POLEN, J., concurs.
FARMER, J., concurs specially with opinion.