[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-15929
Non-Argument Calendar

_____

D. C. Docket No. 5:11-cv-00065-RS-CJK

AXA EQUITABLE LIFE INSURANCE COMPANY,

Plaintiff,

KAY J. CHERRY,

Defendant - Cross Defendant -
Cross Claimant - Appellant,

versus

LYNN L. CHERRY,

Defendant - Cross Claimant -
Cross Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(November 9, 2012)

Before CARNES, WILSON and EDMONDSON, Circuit Judges.

PER CURIAM:

Kay J. Cherry appeals the district court's award of the entirety of the proceeds from her former husband's life insurance policy with AXA Equitable Life Insurance Company ("AXA") -- except for the remaining balance of alimony she was owed -- to his surviving spouse, Daratha Lynn Littleton Gager Cherry ("Lynn Cherry").  No reversible error has been shown; we affirm.

Briefly stated, in January 1988, AXA issued a $100,000 life insurance policy to James Ashley Cherry.  In his application for the policy, James Cherry designated Kay Cherry (his then-spouse) as his primary beneficiary.  The marriage was dissolved in October 2002, pursuant to a Final Judgment of Dissolution of Marriage, which incorporated a Mediation Settlement Agreement ("MSA") signed by both parties.  The MSA established that James Cherry's alimony obligation to Kay Cherry totaled $180,000, payable in 120 monthly installments.[1]  The agreement further provided, in part:

> The above alimony will be secured by the Husband maintaining the "Equitable" and "Ohio" life insurance policies on his life with the Wife as sole irrevocable beneficiary.  The Husband agrees to not encumber or decrease the face value so long as he has an alimony

---

[1] The MSA required James Cherry to pay Kay Cherry $2,000 per month for a period of 60 months starting in November 2002, followed by payments of $1,000 per month for an additional 60 months.

2

obligation.  The Husband shall provide the Wife with documentary proof of said insurance.  In the event that the Husband dies while he has an alimony obligation to the Wife, the proceeds from said life insurance policies shall be held in trust and transferred to the Wife.[2]

In 2009, James Cherry sent AXA a request for a beneficiary change, designating Kay Cherry and his current wife, Lynn Cherry, as equal 50 percent primary beneficiaries of the policy proceeds.  As part of his request, James Cherry submitted documentation showing that he had successfully met part of his alimony obligation and, therefore, was entitled to add his present wife as a partial beneficiary under the Policy.[3]  Following James Cherry's death on 2 December, 2010, both Kay Cherry and Lynn Cherry submitted claims to AXA for the life insurance benefits under the policy.  This appeal stems from AXA's interpleader complaint, filed pursuant to Fed.R.Civ.P. 22, seeking clarity on the parties' respective rights, if any, to the policy proceeds.[4]

---

[2] James Cherry also had a $100,000 life insurance policy with Americo, formerly known as  The Ohio Life Insurance Company.  Only the AXA policy is at issue in this appeal.

[3] In a letter dated 9 April, 2009, James Cherry advised AXA that he had fulfilled the first part of his alimony obligation: paying $120,000.  He also had paid $13,000 of the second part of his alimony commitment.  As of January 2009, James Cherry advised AXA that he still had approximately $34,000 left of his total alimony payments.

[4] Lynn Cherry also filed a cross-claim for a declaratory judgment against Kay Cherry, pursuant to Fed.R.Civ.P. 13.  Kay Cherry, in turn, filed a cross-claim for the imposition of a constructive trust on the proceeds of the AXA policy pending a resolution in the case.

3

The district court ruled that Kay Cherry was only entitled to the amount of alimony that James Cherry still owed to her when he died from the proceeds of the AXA life insurance policy; the remaining balance was awarded to Lynn Cherry.

On appeal, Kay Cherry argues that the district court erred by determining the intent of the parties contrary to the plain meaning of the contract.  She maintains that she is entitled to all the proceeds from the AXA policy because the MSA unambiguously states "[i]n the event that the Husband dies while he has an alimony obligation to the Wife, the proceeds from said life insurance policies shall be held in trust and transferred to the Wife."  Lynn Cherry counters that the AXA life insurance policy simply was security for outstanding alimony and that Kay Cherry is entitled only to the $26,500 of the policy proceeds: the remaining balance on the unpaid alimony.

Interpretation of a contract is a question of law that we review de novo. Tobin v. Michigan Mut. Ins. Co., 398 F.3d 1267, 1274 (11th Cir. 2005).  We likewise review de novo a district court's construction of a settlement agreement. Waters v. Int'l Precious Metals Corp., 237 F.3d 1273, 1277 (11th Cir. 2001).

The parties agree that Florida law controls the issues in this appeal.  Under Florida law, settlement agreements are governed by contract law.  U.S. Fire Ins. Co. v. Caulkins Indiantown Citrus Co., 931 F.2d 744, 749 (11th Cir. 1991).  "In

4

construing a contract, the court should place itself as nearly as possible in the position of the parties when the contract was executed, and should consider the object sought to be accomplished by the agreement." Ballantyne v. Ballantyne, 666 So. 2d 957, 959 (Fla. Dist. Ct. App. 1996). When a MSA is ambiguous, the terms of the agreement need to be read in the context of the entire contract. See Liss v. Liss, 937 So. 2d 760, 763 (Fla. Dist. Ct. App. 2006).

The insertion of life insurance policies in a MSA might potentially have two separate purposes: (1) security for unpaid support obligations, or (2) as part of the property distribution to minimize economic harm to the family. Id. at 763. If the life insurance proceeds are intended as security for unpaid support obligations, only the unpaid portion may be encumbered. Id. at 763-64; see also Smith v. Smith, 912 So. 2d 702, 705 (Fla. Dist. Ct. App. 2005).

In this case, the MSA clearly states that the "alimony will be secured" by the two life insurance policies. In addition, the structure of the agreement also supports the view that the AXA policy was intended as security for unpaid alimony, if James Cherry died before the total amount was paid.

The MSA is divided into three sections. The first section divides the parties' assets and liabilities. The second section establishes the alimony obligation and security for the payments. The third and final section is for

5

miscellaneous issues.  To accept the interpretation urged by Kay Cherry is to insert a property interest into a section devoted to protection of support.  If the proceeds of the AXA policy were intended to be part of the property distribution -- thereby resulting in Kay Cherry receiving a full 50 percent share of the total face value of the policy -- then it would naturally follow that the policy should have been included in the assets and liabilities section; it was not.

Kay Cherry maintains that the MSA clearly outlined that, until James Cherry fulfilled his entire alimony obligation, she would remain the "sole irrevocable beneficiary" of the AXA policy.  The provision in the MSA requiring James Cherry to provide life insurance as security for payment of his "non-modifiable" alimony obligation, however, was subject to both diminution in amount and revocation in accordance with the remaining balance of the alimony commitment.  James Cherry only changed the beneficiary designation on the policy after paying most of the required $180,000 alimony: with less than Kay Cherry's revised 50 percent share of the $100,000 face value of the policy still due.  Because the record demonstrates that the insurance proceeds were intended as security for unpaid alimony, Kay Cherry has not shown that she was entitled to more than the unpaid alimony left to be paid following James's death.  See Liss, 937 So. 2d at 763-64.

6

AFFIRMED.