[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 20-11408
Non-Argument Calendar

————————————————

D.C. Docket No. 6:18-cv-01989-CEM-LRH


THE PRUDENTIAL INSURANCE COMPANY OF AMERICA,

Plaintiff - Appellee,

versus

JUDITH REEVES, et al.,

Defendants,

DIANA BELL,

Defendant - Appellant.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(April 27, 2021)

Before GRANT, LUCK, and JULIE CARNES, Circuit Judges.

PER CURIAM:

This interpleader action concerns entitlement to a portion of the proceeds of a life insurance policy issued by The Prudential Insurance Company of America to the deceased, Dr. Ronald Reeves. Judith Reeves, the deceased's ex-wife, asserts that their divorce judgment awarded her $250,000 of the available benefits upon her ex-husband's death. Diane[1] Bell, the deceased's sister, is a beneficiary of the remainder of the benefits not awarded to Reeves. Ms. Bell maintains that Ms. Reeves is entitled only to the amount of alimony payments in arrears, which all parties agree was $47,380 (plus interest) at the time of Dr. Reeves's death. On summary judgment, the district court construed the divorce judgment to award $250,000 to Ms. Reeves. After careful review, we affirm.

I.     **BACKGROUND**

A.     **Factual Background**

Dr. Ronald Reeves and Judith Reeves divorced in December 2007 after thirty-three years of marriage. A Florida Circuit Court issued a Final Judgment of Dissolution of Marriage ("Divorce Judgment") awarding Ms. Reeves alimony. The court awarded alimony in the form of "permanent periodic" payments of $1,030 per month in addition to a portion of Dr. Reeves's military retirement pay.

---

[1] The record indicates that Ms. Bell's name is spelled "Diane," rather than "Diana," as originally spelled in the Complaint and stated in the caption.

The court ordered that "[t]his alimony shall continue until modified by court order, the death of either party, or remarriage of Wife, whichever occurs first." The court provided several reasons justifying the awarded alimony, including: (1) the parties' "high standard" of living during the marriage; (2) the long duration of the marriage; (3) the poor physical health and emotional condition of Ms. Reeves; (4) the traditional nature of the marriage where Ms. Reeves was responsible for the majority of homemaking duties and raising the couple's six children; and (5) Ms. Reeves's assistance in building Dr. Reeves's career as a forensic pathologist.

In addition to awarding alimony, the court ordered that Dr. Reeves maintain an existing life insurance policy for Ms. Reeves's benefit:

> **Life Insurance**. In order to secure alimony for the Wife, the Husband shall maintain a life insurance policy in a face amount of two hundred fifty thousand dollars ($250,000.00). The Husband shall name the Wife the irrevocable beneficiary of Prudential Financial Life Insurance Policy No. 98-098-592. The Husband shall provide the Wife with a copy of the life insurance policy/declaration sheet within thirty (30) days of the execution of this agreement, and furnish the Wife with proof of payment of the premiums within thirty (30) days of the due date. This Judgment shall be self executing in that in the event the Husband, Dr. Ronald L. Reeves, does not make such a change as he is directed to do so herein, then under the provisions of Florida Law this Order shall act as an assignment of the entire death benefit amount of Prudential Financial Life Insurance Policy No. 98-098-592, payable to the Wife, Judy L. Reeves, in the event of his death.

Dr. Reeves updated the beneficiary designation for the mentioned Prudential policy to provide:

The amount payable under this policy at the time of death of the insured shall be payable as follows:  (i) to Judy L. Reeves ("Ex-Wife") the lesser of (A) the amount, if any, of alimony payable to Ex-Wife under the Final Judgment of Dissolution of Marriage (Case No.: 06-33716-FMCI-30 in the Circuit Court, Seventh Judicial Circuit, in and for Volusia County, Florida) dated December 19, 2007 that is accrued and unpaid at the time of death of the insured, and (B) $250,000.00, and (ii) the balance of the amount payable under this policy at the time of death of the insured remaining after deduction of the amount, if any, payable to Ex-Wife pursuant to clause (i) shall be payable to Diana Bell.  The designation of Ex-Wife as a beneficiary under this policy is irrevocable.

Dr. Reeves died nearly ten years later.  As a result, Prudential policy death benefits in the amount of $609,334.25 became due to the beneficiaries.  Ms. Reeves made a claim with Prudential for $250,000 of the death benefits pursuant to the Divorce Judgment.  Ms. Bell also made a claim to the death benefit, asserting she was owed the entirety of the death benefit less the $47,380 (plus interest) that represented the amount of alimony in arrears at the time of Dr. Reeves's death.

## B.    Procedural History

After paying Ms. Bell the portion of the death benefits indisputably owed to her, which was approximately $360,000, Prudential filed this interpleader action to determine how the approximately $250,000 remaining should be distributed.  Prudential deposited $264,057.49, the remaining death benefit plus interest, into the court registry and was dismissed from the case.

Ms. Bell and Ms. Reeves each moved for summary judgment.  The parties do not dispute that, at the time of his death, Dr. Reeves owed $47,380 (plus

4

interest) in alimony arrearages to Ms. Reeves.  Nor do the parties dispute that Ms. Bell is entitled to whatever is left of the $609,334.25 death benefit that is not payable to Ms. Reeves under the Divorce Judgment.  What they do dispute is the amount that is properly payable to Ms. Reeves:  that is, either the amount of alimony arrearages in the approximate amount of $47,000 plus interest, as Ms. Bell claims, or the $250,000 described as the face amount of the policy in the Divorce Judgment, as Ms. Reeves claims.  Holding that the Divorce Judgment awarded Ms. Reeves $250,000, the district court granted her motion for summary judgment and denied Ms. Bell's corresponding motion for summary judgment.

In so ruling, the court first noted that the parties agreed that the Divorce Judgment, and not Dr. Reeve's beneficiary designation, dictates how the death benefits should be divided.  Focusing on the Divorce Judgment, the court concluded that, based on Florida law and the alimony section of the Divorce Judgment, Ms. Reeves is entitled to $250,000 rather than just alimony arrearages. Citing a string of Florida cases, the court found that "to secure alimony for the Wife" language of the Divorce Judgment signaled an intent to "replace" the stream of alimony payments with the entire amount of the coverage ordered upon the death of Dr. Reeves.  The court reasoned that the justifications provided for awarding alimony also supported "Ms. Reeves's need for security not only for arrearages but also against the risk of Dr. Reeves dying and leaving her without a

monthly $1,030.00 incoming alimony payment."  Finally, the court found the Life Insurance paragraph dispositive:

> And any doubt about the effect of the Final Judgment of Dissolution's life insurance requirement on the disposition of the policy proceeds here is eliminated by other language in the Life Insurance paragraph, which clarifies that Ms. Reeves was to receive the full $250,000. Another sentence in that paragraph provides:  "This Judgment shall be self executing in that in the event the Husband, Dr. Ronald R. Reeves, does not make such a change [of beneficiary] as he is directed to do so herein, then under the provisions of Florida Law this Order shall act as an assignment of the entire death benefit amount" of the policy to Ms. Reeves.

The court rejected, as unsupported and inconsistent with the text, Ms. Bell's contention that the self-executing language of this paragraph was a "penalty provision" intended to award Ms. Reeves $250,000 only in the event Dr. Reeves failed to name Ms. Reeves as a beneficiary of his life insurance policy.

Ms. Bell filed this appeal.

## II.    DISCUSSION

### A.    Standard of Review

"We review *de novo* a summary judgment," applying the same standards as the district court. *Am. Gen. Life Ins. Co. v. Schoenthal Fam., LLC*, 555 F.3d 1331, 1337 (11th Cir. 2009).  The parties agree that no facts are disputed.  Accordingly, this appeal turns on our *de novo* review of the legal conclusions reached by the district court regarding the interpretation of the Divorce Judgment.

6

### B.    The District Court Properly Granted Summary Judgment to Reeves

Ms. Bell challenges the district court's ruling that the Divorce Judgment made Ms. Reeves the irrevocable beneficiary of $250,000 of the death benefit of the Prudential policy maintained by Dr. Reeves.  Ms. Bell maintains that the stated purpose of the ordered life insurance was "to secure alimony for the Wife" and this language is insufficient to entitle Ms. Reeves to "a windfall death benefit," especially when the Divorce Judgment did not convey any property interest in the policy to Ms. Reeves in the assets and liabilities section.

The parties agree that Florida law controls the issue in this appeal.[2]  Florida law authorizes courts to protect an award of alimony by ordering the purchase and maintenance of a life insurance policy.  Section 61.08(3) of the Florida Statutes states:  "To the extent necessary to protect an award of alimony, the court may order any party who is ordered to pay alimony to purchase or maintain a life insurance policy or a bond, or to otherwise secure such alimony award with any other assets which may be suitable for that purpose."  Fla. Stat. § 61.08(3).  In interpreting the scope of section 61.08(3), the Florida Supreme Court has held that the statute "permits the trial court to order an obligated spouse, as an integral part

---

[2]  The parties also agree that the Divorce Judgment controls over the terms of the life insurance policy designating beneficiaries.  "Florida courts have consistently construed provisions similar to this one to require the insured to name the person so designated by the divorce decree to be the beneficiary of the life insurance policy, and to nullify attempts to name another person as beneficiary."  *Prudential Ins. Co. of Am. v. Boyd*, 781 F.2d 1494, 1496 (11th Cir. 1986).

7

of the equitable distribution and support scheme, to purchase life insurance or other security either to satisfy arrearages or to otherwise protect the receiving spouse in appropriate circumstances." *Sobelman v. Sobelman*, 541 So.2d 1153, 1154–55 (Fla. 1989). In fact, to protect the financial well-being of the receiving spouse, the court may "provid[e] for payment of the entire policy proceeds upon the obligor spouse's death." *Richardson v. Richardson*, 900 So.2d 656, 660 (Fla. 2d Dist. Ct. App. 2005).

Thus, an order requiring the purchase and maintenance of a life insurance policy may serve not only the narrow purpose of providing indemnity for alimony arrearages for the receiving spouse but also the broader purpose of protecting the continuing financial well-being of this surviving spouse upon the death of the obligor spouse. Indeed, as to the latter purpose, in *Sobelman*, the trial court had awarded the wife permanent periodic alimony payments in the amount of $1250 per month. 541 So.2d at 1153. The court further required the husband to purchase life insurance to secure these payments, rejecting the husband's argument that proceeds from the life insurance could be used only to reimburse the wife for any arrearage in payments owed while the husband was still alive. *Id*. On appeal, the husband argued that a requirement that he purchase a life insurance policy to provide support for his wife after his death constituted "postmortem alimony, which is prohibited under Florida common law." *Id*. at 1154. The Florida

8

Supreme Court rejected this argument, noting that upon the death of the insured husband, "the insurance company, not the insured's estate, pays the insurance proceeds to the beneficiary. . . . Neither the husband nor his estate would be obligated to make any payments to the wife." *Id*. In short, the requirement of a life insurance policy to provide necessary financial support to a surviving spouse for whom permanent alimony has been awarded does not constitute postmortem alimony. *Id*.

Accordingly, Florida law does not prohibit a divorce decree, in appropriate circumstances, from requiring the supporting spouse to purchase a life insurance policy payable to a supported spouse whose financial security would be threatened by the cessation of court-ordered permanent periodic payments upon the death of the supporting spouse. The question here is whether the state trial court judgment was intended to accomplish the above purpose, or instead was intended to provide only for payment of insurance proceeds equivalent to the amount of any arrearage in alimony payments.

To understand what purpose is being served by requiring the obligated spouse to maintain a life insurance policy, "[t]he trial court must specify the method by which the insurance proceeds are to be paid if it requires an obligated spouse to maintain life insurance to secure alimony." *Richardson*, 900 So.2d at 661 (citing *Kearley v. Kearley*, 745 So.2d 987, 988–89 (Fla. 2d Dist. Ct. App.

1999).  If, however, the judgment fails to state the purpose of the insurance requirement—except to say that it is "to secure alimony," or the like—Florida courts will nonetheless review the record to ascertain the court's intentions.  *See Mackoul v. Mackoul*, 224 So.3d 921, 922 (Fla. 1st Dist. Ct. App. 2017) (judgment establishing lien on real property "to secure the award of child support and alimony" while not a model of clarity, established a lien to secure both alimony arrearages and a stream of future payments when read in context); *cf. Forgione v. Forgione*, 845 So.2d 968, 970 (Fla. 4th Dist. Ct. App. 2003) (need "to secure the alimony award" by requiring $1,000,000 life insurance policy naming wife as beneficiary was demonstrated by findings that established her limited employability notwithstanding the absence of specific findings in the final judgment regarding the need for life insurance); *Moorehead v. Moorehead*, 745 So.2d 549, 552 (Fla. 4th Dist. Ct. App. 1999) (given the absence of trial court findings regarding the need for a life insurance policy to secure the wife's alimony, the appellate court was required to review the record for evidence of such a need, and it found no supporting evidence).

The Divorce Judgment here states that the purpose of the life insurance requirement was "to secure alimony for the Wife."  By itself, that phrase is ambiguous, in that it could be interpreted as either providing security only for alimony arrearages or instead as also providing a source of money for Ms. Reeves

10

in the event Dr. Reeves predeceased her.  Nevertheless, we conclude that when this phrase is read along with the remainder of the Life Insurance section, the Divorce Judgment imposed an obligation to maintain a life insurance policy whose entire face amount would be payable to Ms. Reeves should her husband predecease her.

The Divorce Judgment directs Dr. Reeves to name Ms. Reeves the "irrevocable beneficiary" of a policy with a face amount of $250,000.  The Life Insurance section of the judgment does not limit Ms. Reeves to receiving "up to" $250,000.  And, as Ms. Bell concedes, it says nothing about limiting her benefits to alimony arrearages.  It does, however, reflect an intent to secure alimony through payment of a $250,000 death benefit.  Specifically, the self-executing provision of that section provides that, in the event Dr. Reeves did not name Ms. Reeves an irrevocable beneficiary of the Prudential policy, the judgment would be "self executing" where the "Order shall act as an assignment of the entire death benefit amount" of the Prudential policy to Ms. Reeves.  As the district court noted, this self-executing provision ensures the court's objectives are met even in the absence of action by Dr. Reeves.  *Cf. Diez v. Denson*, 719 So.2d 1206, 1207 (Fla. 2d Dist. Ct. App. 1998) (noting that where order "contained a self-executing clause in the event [the husband] failed to comply [with order to name wife as beneficiary] . . . , the order was sufficient in itself to cause the insurer to recognize [the wife] as beneficiary even in the absence of a change of beneficiary form").  Thus, the self-

11

executing provision clarifies the ambiguity in the phrase "to secure alimony for the Wife" and supports an interpretation that Ms. Reeves interest in the proceeds extends beyond just alimony arrears.

Ms. Bell argued below that the self-executing clause was merely a "penalty provision" that provided Ms. Reeves the entire death benefit only if Dr. Reeves failed to comply with the divorce decree. The district court rejected that argument as unsupported by any authority and inconsistent with the text of the Divorce Judgment, and we agree. On appeal, Ms. Bell refrains from describing the self-executing clause as a "penalty provision," but she nonetheless continues to parrot the gist of such a characterization when she asserts that "the obvious negative corollary of the district court's supposition is that [Ms.] Reeves was not entitled to a lump sum of the entire policy amount if Dr. Reeves changed the beneficiary designation as directed in the decree." Again, Ms. Bell cites no authority supporting a construction of the self-executing clause as awarding a $250,000 death benefit only if Dr. Reeves failed to name Ms. Reeves as the beneficiary of the insurance policy. Nothing in the Life Insurance section suggests that the life insurance terms of the judgment when self-executed would differ from the terms in effect should Dr. Reeves comply with the court's directive. To the contrary, the provision expressly directs Dr. Reeves to name Ms. Reeves the "irrevocable

12

beneficiary" of a policy with a face amount of $250,000[3] and makes that order "self executing" should Dr. Reeves fail to comply.

Moreover, the trial court's specific findings further support an inference that it was not the court's intent to limit Ms. Reeves to payment of only the amount of alimony in arrearage at the time of Dr. Reeves' death. Specifically, the court's finding that Dr. Reeves was six years older than Ms. Reeves and in "poor physical health" suggests a concern about Ms. Reeves's financial needs in the likely event that her former husband would predecease her. *See Forgione*, 845 So.2d at 970–71 (record indicated need to "secure the alimony award" with life insurance policy where husband had "serious health problems"). And its findings that Ms. Reeves was in poor health, suffered from emotional conditions, and had always worked in the home raising the family's six children similarly suggests the court's awareness that Ms. Reeves prospects for employment were limited, thereby further bolstering the need for life insurance as a means to fund the permanent alimony that was needed by Ms. Reeves and whose premiums the court necessarily concluded Dr. Reeves could afford to pay.[4] *Id.* at 970 (relying on findings establishing receiving

---

[3] Ms. Bell maintains that the self-executing clause cannot be read to secure $250,000 in alimony because it made "the entire death benefit amount" of the policy payable to Ms. Reeves and by the time of Dr. Reeves's death, the entire death benefit amount had grown to $609,334.25. But nothing in the record suggests the court was aware that the ultimate death benefit of Dr. Reeves's policy would differ from the $250,000 face amount ordered.

[4] Ms. Bell argues that "the divorce decree's inclusion of these factors shows only that the divorce court fulfilled its [statutory] duty in determining whether or not alimony is justified" and

spouse's limited employability notwithstanding the absence of specific findings in the final judgment regarding the need for life insurance).[5]

Finally, we are left with Ms. Bell's assertion that the Divorce Judgment should not be construed to award a $250,000 death benefit to Ms. Reeves because it did not convey any property interest in the Prudential policy to Ms. Reeves in the assets and liabilities section. However, the copy of the Divorce Judgment filed with the district court by Prudential redacted all but the alimony section. Ms. Bell did not provide a copy of the full Divorce Judgment to the district court, much less make any argument dependent on sections of the judgment other than the section awarding alimony. We will not consider arguments raised for the first time on

_____

does not reveal any intent of the divorce court's part to award Reeves the entire death benefit. It is true that the state trial court was required to make findings justifying an award of alimony. The substance of the findings concerning the financial circumstances faced by Ms. Reeves, however, are also relevant in discerning the court's intent as to the purpose of the insurance policy. In any event, we cite these findings not as conclusive proof that the court intended the life insurance policy to secure more than alimony arrearages, but merely to establish that the court's findings are consistent with the need for a policy to provide support to Ms. Reeves following Dr. Reeves's death, as reflected in the self-executing provision of the judgment.

[5] Ms. Bell also argues that we should follow the holdings in *Massam v. Massam*, 993 So.2d 1022, 1025 (Fla. 2nd Dist. Ct. App. 2008) and our unpublished decision in *AXA Equitable Life Insurance Company v. Cherry*, 496 F. App'x 917, 920 (11th Cir. 2012), both of which construed the phrase "to secure alimony" to provide for only payment of alimony arrears. Neither of those cases, however, involved a judgment with a self-executing provision that confirms the purpose of the life insurance ordered, as does the judgment here. Moreover, this case involves alimony in the form of permanent periodic payments that were viewed as necessary for the remainder of Ms. Reeves's life, but that would otherwise cease upon Dr. Reeves's death absent a life insurance policy. Yet, *Massam* did not specify the type of alimony awarded and *Cherry* awarded a sum certain of $180,000, payable in 120 monthly installments, that was secured by life insurance. *Massam*, *id.*; *Cherry*, 496 F. App'x at 918.

appeal. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

In short, while the alimony section of the Divorce Judgment is admittedly not a model of clarity, we agree with the district court's conclusion that the state trial court intended the life insurance policy to provide a $250,000 benefit to Ms. Reeves upon Dr. Reeves's passing.

## III.    CONCLUSION

For the reasons explained above, we **AFFIRM** the decision of the district court granting Ms. Reeves summary judgment and denying Ms. Bell summary judgment.